

# Exhibit A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION



| | |
|---|---|
| CHRISTINE DANCEL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GROUPON, INC., a Delaware Corporation,<br><br>*Defendant.* | Case No.<br><br>2016CH017166<br>CALENDAR/ROOM 10<br>TIME 00:00<br>Class Action |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Christine Dancel ("Plaintiff" or "Dancel") brings this class action complaint against Defendant Groupon, Inc. ("Groupon") to put an end its unlawful practice of using the photographs and likenesses of Illinois residents without their consent to promote and market its products. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.    Groupon is a public company that generates over one billion dollars of revenue each quarter by selling vouchers known as "Deals." Groupon's Deals are redeemable for discounts at participating businesses likes restaurants and stores. Groupon sells its Deals exclusively through its website, www.Groupon.com.

2.    Like many e-commerce websites, Groupon creates unique landing webpages for each Deal currently for sale. On these landing pages, Groupon advertises and promotes the Deal by, among other things, showing photographs of individuals who are seemingly endorsing it.

3. The individuals displayed on Defendant's Deal pages, though, have no idea that their pictures and likenesses are being used to promote and endorse Defendant's products.

4. Indeed, the photographs that Groupon parades on its Deal pages are actually personal pictures belonging to users of Instagram (an un-related third-party social network) have uploaded to their personal accounts. The only connection that these personal pictures have to Groupon is that the individuals "tagged" their photographs on Instagram with the name of the restaurant or store featured in the Deal being offered.

5. Nonetheless, Groupon "scraped" (*i.e.*, secretly collected) the tagged personal photographs from Instagram and used them to promote Deals on its website.

6. By using these individual's photographs and likenesses without their written consent for its own commercial gain (i.e., to promote and sell its Deals), Groupon has violated and continues to violate the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq*.

## PARTIES

7. Plaintiff Christine Dancel is a natural person and a citizen of the State of Illinois.

8. Defendant Groupon, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 600 West Chicago Avenue, Chicago, Illinois 60654. Groupon does business through the State of Illinois, Cook County, and throughout the United States.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Groupon conducts business transactions in Illinois, has committed tortious acts in Illinois, is registered to conduct business in Illinois, and is headquartered in Illinois.

10. Venue is proper in Cook County because Defendant maintains its headquarters in

Cook County, conducts business transactions in Cook County, and the cause of action arose, in substantial part, in Cook County.

## COMMON FACTUAL ALLEGATIONS

### The Illinois Right of Publicity Act

11.    In 1999, the Illinois Legislature recognized that every individual has the "right to control and to choose whether and how [his or her] identity [is used] for commercial purposes," 735 ILCS 1075/10, and as a result, passed the IRPA to both protect individual privacy rights and prevent the exploitation of individuals' images for another's commercial gain.

12.    The Act protects consumers from the unauthorized use of their name, signature, photograph, image, likeness, or voice for commercial purposes.

13.    Indeed, the Act states that "a person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person. . . ." 735 ILCS 1075/30. And notably, the IRPA does not require the person seeking relief under the Act to be a public figure.

### Groupon Uses Consumers' Instagram Photos To Promote Deals

*Groupon's Deal Offer Pages*

14.    Groupon advertises and sells thousands of Deals in the State of Illinois. When a consumer seeks out a new Deal, they are guided to a Deal-specific offer page on the Groupon website. These offer pages include information such as the name, location, and description of the business being promoted, the terms of the offer, and photographs provided by the business (e.g., photos of food). *See* Figures 1 and 3.

3



(**Figure 1**, showing Defendant's webpage for a Deal at Philly G's.)



(**Figure 2**, showing details on Defendant's Philly G's Deal page.)



(**Figure 3**, showing location and photos on Defendant's Philly G's Deal page.)

*The "Photos" Component on the Offer Page*

15. One of the primary components of each of Defendant's Deal offer pages is the "Photos" section. Here, Defendant inserts many photographs of consumers that were purportedly taken at the location of the offered business. Figure 4, below, shows a group of photographs displayed by Defendant on its Philly G's Deal page that appear to be taken at Philly G's. *See Figure 4.*



(**Figure 4.**)

16. Groupon draws these photos from Instagram through Instagram's "API" (application programming interface)—a computer protocol that allows for the interconnection of

different services. Groupon makes an Instagram API request for photographs corresponding with the location of the business featured in the Groupon Deal (i.e., Philly G's) and Instagram returns with a batch of photos matching the criteria.

17.     The consumers who own and appear in the Instagram photos used by Groupon have previously posted them (through their own personal accounts) to the Instagram social network. Consumers post these photos for the purpose displaying them to the "followers" of their personal Instagram profiles. The photos are not tagged with "Groupon" or marked in any other way to convey that the people appearing in the picture utilized the Groupon Deal.

18.     In fact, the individuals appearing in the Instagram photos did not provide consent for their pictures to appear on Groupon's website for commercial purposes. And, they did not give consent to Instagram to share their photos with Groupon for use third-party advertisements for commercial purposes.

*Groupon Misappropriates Consumers' Photos For Its Own Commercial Gain*

19.     Groupon's incorporation of Instagram user photos into Deal advertisements serves a fundamental part of its business model. Indeed, a core part of Groupon's advertising strategy is to convince consumers to make the purchase *because other consumers have already done the same*. Groupon is well aware of the impact social influence has on consumers and seeks to capitalize on that marketing theory by using the conduct of other consumers to convert new customers.[1]

20.     As such, Groupon publishes consumers' Instagram photographs for the sole

---

[1]     *See Group-Buying Deal Popularity*, Xueming Luo, *et al.*, American Marketing Association Journal of Marketing (2013) (noting the "bandwagon" effect that group-buying merchants, like Groupon, exploit and stating that "consumers seem to be influenced by deal popularity at both the purchase and redemption phases . . . merchants should encourage social interactions among consumers, since social influence-related referral intensity and group consumption can amplify the effects of deal popularity on consumer purchase and redemption decisions . . . the social influence literature [citation omitted] suggests that ... *[t]he more desirable and popular a deal appears, the more likely a consumer may purchase it.*") (emphasis added).

purpose of promoting and advertising their Deals. Defendant placed the photos on the Deal

page, proximate to the details of the Deal offer and the "Tips" section (which contain potentially

useful facts by *actual* Groupon users), to cause its potential customers to think that people in the

photos are satisfied Groupon customers even though they are not.

21.     By designing the offer page and using Instagram photos in this way, Groupon

intentionally creates the false impression that the consumers appearing in the photos are

endorsing, or have at least purchased, the Deal itself. Beyond simply having consumers' pictures

appear on the Groupon advertisement without notice or permission, the pictures themselves

contain a hyperlink to each individual's personal Instagram account and social network profile.

22.     Therefore, Groupon has, and continues to, misappropriate the photographs of

thousands of individuals for its own commercial gain.

*Groupon Violates Instagram's Policies*

23.     Not surprisingly, Groupon's conduct of utilizing individual's Instagram photos as

part of its advertisement violate Instagram's own terms of service. Specifically, Instagram states

in its API Platform Terms and Conditions, FAQs, and other information guides:

> 13.  Obtain a person's consent before including their User Content in any ad.

**(Figure 5.)**[2]

> 8. Licensed Uses and Restrictions: The Instagram APIs are owned by Instagram and are licensed to you on a worldwide (except as limited below), non-exclusive, non-sublicenseable basis in accordance with these terms. Your license to the Instagram APIs continues until it is terminated by either party. Please note that User Content is owned by users and not by Instagram. All rights not expressly granted to you are reserved by Instagram.

**(Figure 6.)**[3]

> **Does Instagram let advertisers use my photos or videos?**
>
> No. You own your own photos and videos. Advertising on Instagram doesn't change this.

**(Figure 7.)**[4]

---

[2]     *Platform Policy • Instagram*, https://www.instagram.com/about/legal/terms/api/ (last visited Feb. 5, 2016).

[3]     *Id.*

**PLATFORM POLICY**

Before you start using the API Platform, we have a few guidelines that we'd like to tell you about. Please make sure to read the full Platform Policy. Here's what you'll read about:

1. Instagram users own their media. It's your responsibility to make sure that you respect that right.
2. You cannot use "insta", "gram" or "Instagram" in your company or product name.
3. You cannot replicate the core user experience of the Instagram apps or web site. For example, do not build a media viewer.
4. You cannot use the API Platform to crawl or store users' media without their express consent.
5. Do not abuse the API Platform, automate requests, or encourage unauthentic behavior. This will get your access turned off.

**(Figure 8.)**[5]

24.     As a result Plaintiff, on behalf of herself and a Class of similarly situated Illinois residents, seeks relief for Groupon's past and continuing violations of the IRPA, including (1) an injunction requiring Groupon to cease using Instagram user's photographs and likenesses to advertise and sell Groupon Deals without consent, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of same, or statutory damages to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF DANCEL

25.     In or around August 2015, Plaintiff visited "Philly G's" restaurant. While there, Plaintiff took a photo of herself and uploaded it to her Instagram profile. Plaintiff Dancel tagged location data to her photograph that indicated she has taken the photograph at "Philly G's" restaurant in Vernon Hills, Illinois.

26.     Plaintiff does not have a Groupon account and did not purchase or use a Groupon for Philly G's. Likewise, the caption and description of her photo did not mention Groupon in any way.

---

[4]     *Does Instagram let advertisers use my photos or videos? | Instagram Help Center,* https://help.instagram.com/206875879493855 (last visited Feb. 5, 2016).
[5]     *Instagram Developer Documentation,* https://www.instagram.com/developer/ (last visited Feb. 5, 2016).

27.     Yet, unbeknownst to Plaintiff, after uploading the photograph to her personal

Instagram account, Groupon requested her photograph from Instagram and displayed it on its

Philly G's Deal offer page (the bottom right corner in <u>Figure 9</u>, below). The Groupon Deal

offered a voucher: "$35 for $60 Worth of Generations-Old Italian Cuisine at Philly G's."



(**Figure 9**, showing a screenshot of Defendant's Deal for Philly G's using Plaintiff's photograph
and likeness without her consent.)

28.     Plaintiff never provided her consent to Groupon to use her photographs, images,

and/or likeness on its website for any reason, let alone to advertise and sell its Deals.

## CLASS ALLEGATIONS

29.     Plaintiff brings this action, pursuant to 735 ILCS 5/2-801 on behalf of herself and

a Class of similarly situated individuals, defined as follows:

> All Illinois residents (1) who maintain an Instagram account, and (2) whose
> photograph(s) from such Instagram account have appeared on a Groupon Deal
> offer page.

30.     The following people are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendant, Defendant's

subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its

9

parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

31.     **Numerosity:** Upon information and belief, there are over one thousand members in the Class such that joinder of all members is impracticable. Class members can be easily identified through Defendant's records.

32.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. Among the questions of law and fact common to the Class are:

   a.   Whether Groupon displayed Class members' photographs and likenesses on its Deal offer pages;

   b.   Whether Class members provided their written consent to Groupon to display their photographs and likenesses on its Deal offer pages;

   c.   Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1 *et. seq.*; and

   d.   Whether Plaintiff and the Class are entitled to injunctive relief.

33.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interest of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to that of the Class, and Defendant has no defenses unique to the Plaintiff.

10

34.     **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief for Defendant's misconduct. Even if each member of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expenses to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.***
**(On behalf of Plaintiff and the Class)**

35.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36.     The Illinois Right of Publicity Act (765 ILCS 1075/1 *et. seq.*) prohibits using a person's name, photograph, image, or likeness for the sale or advertisement of goods, merchandise, products, and services without written consent.

37.     Groupon owns and operates a website that sells products, known as Deals. Defendant sells its Deals through unique offer pages at www.Groupon.com, and consumers can redeem Groupon Deals for additional products and services.

38.     Groupon intentionally requested Plaintiff's and Class members' Instagram

photographs from their personal Instagram accounts and displayed them on its Deal offer pages. Groupon's placement of these photographs was meant to directly aid in the sale of its Deals and convey that the persons appearing in the photos were endorsing and/or had used the Deals.

39.     A reasonable consumer viewing the Groupon offer page would be led to believe that the persons appearing in the Instagram photos had used a Groupon Deal at that location and/or were otherwise promoting the Deal.

40.     Defendant did not obtain the written consent from Plaintiff and members of the Class before using their photographs, images, and likenesses. In fact, Groupon has not notified Plaintiff or the members of the Class that their photographs were and are being displayed on its website for commercial purposes.

41.     Defendant has systematically and repeatedly used the photographs, images, and likenesses of Plaintiff and the members of the Class for the commercial purpose of promoting and selling Groupon Deals.

42.     Given Groupon's flagrant violations of the IRPA, Plaintiff and the Class are entitled to (1) an injunction requiring Groupon to cease using Instagram user's photographs and likenesses to advertise and sell Groupon Deals, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of same, or statutory damages of $1,000 per violation to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

**PRAYER FOR RELIEF**

43.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays that the Court enter an Order:

> (a) Certifying this case as a class action on behalf of the Class defined above, appoint Christine Dancel as Class Representatives, and appoint her counsel as Class

Counsel;

(b) Declaring that Groupon's actions described herein constitute a violation of the Illinois Right of Publicity Act;

(c) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Groupon from engaging in the wrongful and unlawful acts described herein;

(d) Awarding the greater of actual damages, including profits derived from the unauthorized use of same, or statutory damages in the amount of $1,000 per violation to the members of the Class;

(e) Awarding punitive damages where applicable;

(f) Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

(g) Awarding Plaintiff and the Class pre- and post-judgment interest; and

(h) Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all matters that can be so tried.

Dated: February 5, 2016                                  Respectfully Submitted,

**CHRISTINE DANCEL,** individually and on behalf of all others similarly situated,


By:_____
          One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

# Exhibit B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

                  *Plaintiff,*

    v.

GROUPON, INC., a Delaware Corporation,

                  *Defendant.*

Case No.

*FILED*

2016CH01716
CALENDAR/ROOM 10
TIME 00:00
Class Action

## PLAINTIFF'S MOTION FOR AND MEMORANDUM
## IN SUPPORT OF CLASS CERTIFICATION

Plaintiff Christine Dancel, by and through her undersigned counsel, hereby respectfully

moves the Court for an Order certifying this case as a class action pursuant to Section 2-801 of

the Illinois Code of Civil Procedure, but requests that the Court enter and continue the motion

until after the completion of discovery on class-wide issues, at which time Plaintiff will submit a

more detailed memorandum of points and authorities in support of class certification.[1]

## I. INTRODUCTION.

This matter readily satisfies the prerequisites to class certification. Through a common

course of conduct, Defendant Groupon utilized the personal photos of Illinois consumers—

including Plaintiff and members of a proposed Class of consumers (defined below)—in a

widespread and illegal effort promote its Groupon "Deals." Through that common course of

---

[1]     Plaintiff files this motion at the outset of litigation to prevent Defendant from attempting a so-called "buy off" to moot her representative claims (*i.e.*, attempting to moot her class claims by tendering to her the full amount of her individual claims). *See Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 459 (2011) (noting that under Illinois law, "a named plaintiff who files a motion for class certification *prior* to a Defendant's tender may avoid a mootness determination, at least until after the circuit court rules on the motion for class certification."); *cf., Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (holding that "that an unaccepted settlement offer has no force").

1

conduct, Defendant not only invaded the personal privacy of Plaintiff and the members of the Class, but repeatedly violated the Illinois Right of Publicity Act (765 ILCS 1075/1, *et. seq.*) ("IRPA"), a law enacted specifically to protect consumers from the practice of third parties misusing the photographs and likenesses of Illinois residents without their consent to promote commercial products and services.

For these reasons and as discussed further herein, the proposed Class readily satisfies the prerequisites to certification under Section 2-801, and the instant motion should therefore be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court: (1) enter and reserve ruling on her Motion for and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant her leave to file a supplemental memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant her Motion for Class Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems reasonable and just.

## II. FACTUAL BACKGROUND.

### A. Facts Applicable to All Members of the Putative Class.

Groupon advertises and sells thousands of Deals in the State of Illinois. (Complaint ("Compl.") ¶ 14). When a consumer seeks out a new Deal, they are guided to its own unique offer page on the Groupon website. (*Id.*). These offer pages include information such as the business name, business location, description of the business, terms of the offer, and photographs provided by the business. (*Id.*).

One of the primary components of each Deal offer page is the "Photos" section, which featuring photographs of consumers apparently at the location of the offered business. (*Id.* ¶ 15).

2

Groupon draws these photos from Instagram by making an Instagram API request for photographs corresponding with the location of the business featured in the Groupon Deal. (*Id.*). The individual consumers appearing in these photos posted them on their own personal accounts through the Instagram mobile application. (*Id.*). Consumers post these photos for the purpose displaying them to their own "followers" on their unique Instagram profiles. The photos are not tagged with "Groupon" or marked in any other way to convey that the people appearing in the picture utilized the Groupon Deal. (*Id.* ¶ 16). The individuals appearing in the Instagram photos did not consent to have their pictures appear on Groupon's website for commercial purposes. (*Id.* ¶ 17). They likewise did not give consent to Instagram to share their photos with Groupon to be used in a third-party advertisement for commercial purposes. (*Id.*).

The incorporation of Instagram user photos into its Deal advertisements serves a fundamental part of its business model. (*Id.* ¶ 18). Indeed, a core part of its advertising strategy is to convince consumers to make the purchase *because other consumers have already done the same*. (*Id.*) Groupon is well aware of the impact social influence has on consumers, and therefore seeks to capitalize on that marketing theory by using the conduct of other consumers to convert new customers.[2] (Compl. ¶ 18.) As such, Groupon publishes consumers' Instagram photographs for the sole purpose of advertising their Deals and convincing consumers to purchase its products by creating the image that the people in the photos already have. (*Id.* ¶ 19).

The photos appear directly in line with all other parts of the advertisement and offer, and appear directly adjacent to the "Tips" section, which, unlike the photographs at issue, are

---

[2] *See Group-Buying Deal Popularity*, Xueming Luo, *et al.*, American Marketing Association Journal of Marketing (2013) (noting the "bandwagon" effect that group-buying merchants, like Groupon, exploit and stating that "consumers seem to be influenced by deal popularity at both the purchase and redemption phases . . . merchants should encourage social interactions among consumers, since social influence-related referral intensity and group consumption can amplify the effects of deal popularity on consumer purchase and redemption decisions . . . the social influence literature [citation omitted] suggests that ... *[t]he more desirable and popular a deal appears, the more likely a consumer may purchase it*.") (emphasis added).

submitted by *actual* Groupon users. (*Id.* ¶ 20). By designing the offer page and using Instagram

photos in this way, Groupon intentionally creates the false impression that the consumers

appearing in the photos are endorsing, or have at least purchased, the Deal itself. (*Id.* ¶ 21).

Beyond simply having consumers' pictures appear on the Groupon advertisement without notice

or permission, the pictures themselves contain a hyperlink to each individual's personal

Instagram account and social network profile. (*Id.*). Therefore, Groupon has, and continues to,

misappropriate the photographs of thousands of individuals for its own commercial gain. (*Id.* ¶

22).

> **B.** **Facts Applicable to Plaintiff Dancel.**

In or around August 2015, Plaintiff visited "Philly G's" restaurant. While there, Plaintiff

took a photo of herself and uploaded it to her Instagram account. (*Id.* ¶ 25). Plaintiff Dancel

tagged location data to her photograph that indicated she has taken the photograph at "Philly

G's" restaurant in Vernon Hills, Illinois. (*Id.*). Plaintiff does not have a Groupon account and did

not purchase or use a Groupon for Philly G's. (*Id.* ¶ 26). Likewise, the caption and description of

her photo did not mention Groupon in any way. (*Id.*).

Yet, unbeknownst to Plaintiff, after uploading the photograph to her personal Instagram

account, Groupon scraped her photograph from Instagram and displayed it on its Philly G's Deal

offer page (the bottom right corner, below). (*Id.* ¶ 27). The Groupon Deal offered a voucher:

"$35 for $60 Worth of Generations-Old Italian Cuisine at Philly G's." (*Id.* ¶ 27). Plaintiff never

provided her consent to Groupon to use her photographs, images, and likeness on its website for

any reason, let alone to advertise and sell its Deals. (*Id.* ¶ 28).

> **C.** **The Proposed Class.**

As a result of Defendant's conduct described above, Plaintiff Dancel brought this lawsuit

and now seeks certification of a class of similarly situated individuals, defined as follows:[3]

> All Illinois residents (1) who maintain an Instagram account, and (2) whose photograph(s) from such Instagram account have appeared on a Groupon Deal offer page.

(*Id.* ¶ 29.) As demonstrated below, the proposed Class meets each of the prerequisites for certification under Section 2-801 and therefore, the instant motion should be granted in its entirety.

## III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Certifying a class in Illinois requires the plaintiff to establish that: "(1) [t]he class is so numerous that joinder of all members is impracticable[;] (2) [t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members[;] (3) [t]he representative parties will fairly and adequately protect the interest of the class[; and] (4) [t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801.

In determining whether to certify a proposed class, the Court need not decide whether the plaintiff will ultimately prevail on the merits. *See Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 237 (1st Dist. 2010) (citing *Cruz v. Unilock Chi., Inc.*, 383 Ill. App. 3d 752, 764 (2d Dist. 2008)) (finding that an issue that goes to the merits of the underlying actions "is not appropriate to be considered when examining the propriety of class certification"). Instead, for purposes of considering whether to grant certification, the Court should accept as true the allegations in the

---

[3]     The following are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

complaint, *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007)

(quoting *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 544–45 (5th Dist. 2003)), and

"should err in favor of maintaining class [certifications]." *Id.* (quoting *Clark*, 343 Ill App. 3d at

545).

Here, the putative Class is sufficiently numerous, consisting of thousands of individual

members. Plaintiff's and the putative Class members' claims are based on Defendant's common

course of conduct, such that common issues will predominate over individualized ones. Plaintiff

and her counsel are adequate representatives of the proposed Class, with no potential conflicts or

interests adverse to the Class. And a class action is the most appropriate method to adjudicate the

Class members' claims given the often small individual damages involved, the uniformity and

widespread nature of Defendant's conduct, and the unlikelihood of Class members pursuing

individual actions. Accordingly, this Court should grant class certification.

**A.      Numerosity: The Proposed Class is Sufficiently Numerous and Likely
Consists of Thousands of Individual Members.**

The first step in certifying a class is a showing that "the class is so numerous that joinder

of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when joining

"such a large number of plaintiffs in a single suit would render the suit unmanageable and, in

contrast, multiple separate claims would be an imposition on the litigants and the courts."

*Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (Ill. App. Ct. 1991) (citing *Steinberg v. Chicago

Med. Sch.*, 69 Ill./2d 320; 337 (1977)). "Plaintiffs need not demonstrate a precise figure for the

class size, because a good-faith, nonspeculative estimate will suffice." *Cruz v. Unilock Chicago*,

383 Ill. App. 3d 752, 771 (Ill. App. Ct. 2008). Generally, "[t]he court is permitted to make

common sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs.*,

*LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004)[4] (citations omitted); *see also* 3 Alba

Conte & Herbert B. Newberg, Newberg on Class Actions § 7.20, 66 (4th ed. 2001).

Here, Plaintiff alleges—and discovery will show—that Defendant utilized Class

members' personal Instagram pictures on thousands of Groupon Deal offer pages during the

class period, and that each of these pages were viewed hundreds, if not thousands of times, by

unique visitors. An allegation that the proposed class consists of more than a thousand members

provides "ample basis" to support the conclusion that the class is so numerous that joinder of all

members is impracticable. *Carrao v. Health Care Serv. Corp.*, 118 Ill. App. 3d 417, 427 (1st

Dist. 1983); *see also Tassan v. United Dev. Co.*, 88 Ill. App. 3d 581, 594 (1st Dist. 1980)

(finding more than 150 potential claimants would satisfy numerosity); *Kulins v. Malco, A

Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding even 35 class members

could satisfy numerosity).

Further, even aside from the sheer numbers of potential Class members, joinder is

impracticable and class certification is warranted because (1) the members of the proposed Class

are geographically dispersed throughout the state; (2) the claims per person are often relatively

small and unlikely to be the subject of litigation on an individual basis; and (3) the lawsuit seeks,

*inter alia*, injunctive relief for Defendant's statutory violations. *See Wood River Area Dev. Corp.

v. Germania Fed. Sav. and Loan Ass'n*, 198 Ill. App. 3d 445, 451-53 (5th Dist. 1990).

Accordingly, the first prerequisite for class certification is met.[5]

**B.  Commonality and Predominance: The Proposed Class Shares Common
Questions of Law and Fact that Predominate Over Any Individual Issues.**

---

[4]     Because 735 ILCS 5/2-801 was patterned after Rule 23 of the Federal Rules of Civil Procedure, "federal
decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois."
*Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (2005).

[5]     To the extent the Court requires additional details regarding the number of members in the Class, such
information may be readily obtained through discovery.

Section 2-801's second prerequisite requires that there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Common questions of law or fact are typically found to exist when the members of a proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.*, 87 Ill. 2d 7, 17 (1981); *Steinberg*, 69 Ill. 2d at 341; *McCarthy v. LaSalle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (Ill. Ct. App. 1992). After common questions of law or fact have been identified, these common questions must also predominate over any issues affecting only individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (Ill. Ct. App. 1984). Ultimately, commonality is a relatively low and easily surmountable hurdle. *See Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, Plaintiff's and the Class members' claims are based upon the same common contention: that Defendant violated the IRPA by repeatedly featuring their personal photos on Groupon Deal offer pages for commercial purposes. (Compl. ¶¶ 18-22.) Defendant utilized these photos in a systematic manner and its conduct affected Plaintiff and the members of the Class in a virtually identical manner (*i.e.*, subjecting them to invasion of privacy and statutory violations). (*Id.*) Moreover, Defendant's unlawful conduct will be proven through the use of common and generalized evidence applicable to the Class as a whole.

Defendant's conduct gives rise to several common questions of both law and fact. The

common questions for the Class include: (i) whether Groupon displayed Class members' photographs and likenesses on its Deal offer pages; (ii) whether Class members provided their written consent to Groupon to display their photographs and likenesses on its Deal offer pages; (iii) whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1 *et seq.*; and (iv) whether Plaintiff and the Class are entitled to injunctive relief. (*Id.* ¶ 24.)

Accordingly, Section 2-801's commonality and predominance requirements are met.

**C.      Adequacy of Representation: Plaintiff and Her Counsel are Adequate Representatives and Have No Conflicts with the Members of the Class.**

The third prerequisite of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The purpose of the adequacy of representation requirement is "to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell and Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (Ill. Ct. App. 1988); *Gordon*, 224 Ill. App. 3d at 203.

In this case, Plaintiff has the same interests as the proposed Class members. They each had personal Instagram photos featured on Groupon's Deal pages without their consent. (Compl. ¶¶ 15, 18-22). Thus, Plaintiff suffered the same injury, has the same claims available to her, and has no interests antagonistic to those of the Class. (*Id.*) She will fairly and adequately protect the interests of the Class and his pursuit of the instant action demonstrates as much. (*Id.*)

Similarly, Plaintiff's counsel are well-respected members of the legal community, who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (See Declaration of Ari J. Scharg ¶¶ 4-5, a true and accurate copy of which is attached hereto as Exhibit 1.) Moreover, they have the resources necessary to conduct litigation of this

nature, and have frequently been appointed lead class counsel by courts throughout the country. (See Scharg Declaration at ¶¶ 4-6; *see also* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 1-A to the Scharg Declaration.) Proposed class counsel have already diligently investigated the claims at issue in this action and dedicated substantial resources to the case, and they will continue to do so throughout its pendency. (Id. ¶ 6.)

Thus, the adequacy of representation requirement is satisfied as well.

### D. Appropriateness: This Class Action is the Most Appropriate Method to Adjudicate the Claims at Issue.

The final prerequisite to class certification is met where "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite in a particular case, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at 204; *Purcell and Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("[T]he predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Additionally, a "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 224 Ill. App. 3d at 203; *Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1004 (Ill. App. Ct. 1991) ("In a large and impersonal society, class actions are often the last barricade of consumer protection.").

Under the circumstances of this case, a class action is the most appropriate method for the fair and efficient adjudication of the claims of Plaintiff and the proposed Class. The injuries suffered by many of the individual members of the Class are likely to have been relatively small

compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief. Maintenance of this case as a class action is also appropriate because it would avoid the necessity for multiple adjudications of identical legal and factual issues, thereby reducing the burden on the parties and the judiciary. Likewise, the fact that Section 2-801's numerosity, commonality and predominance, and adequacy of representation requirements have been satisfied, further demonstrates the appropriateness of proceeding with this case as a class action.

Accordingly, Section 2-801's final prerequisite is satisfied and the proposed Class warrants certification.

## IV. CONCLUSION.

For the reasons stated above, and which will be borne out by class discovery, this case is appropriate for class certification. Plaintiff Christine Dancel, individually and on behalf of the proposed Class, respectfully requests that the Court: (1) enter and reserve ruling on her Motion for and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant her leave to file a supplemental memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant her Motion for Class Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems reasonable and just.

Respectfully Submitted,

**CHRISTINE DANCEL,**
individually and on behalf of all others
similarly situated,

Dated: February 5, 2016

By: _____
One of Plaintiff's Attorneys

11

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 44146

Rafey S. Balabanian
rbalabanian@edelson.com
Todd Logan
tlogan@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300

# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| CHRISTINE DANCEL, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>GROUPON, INC., a Delaware Corporation,<br><br>*Defendant*. | Case No. |

## DECLARATION OF ARI J. SCHARG IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

I, Ari J. Scharg, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, hereby declare and state as follows:

1.     I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2.     I am an attorney at the law firm of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Christine Dancel.

3.     Attached hereto as Exhibit 1-A is a true and accurate copy of the firm resume of Edelson PC.

4.     As shown in Exhibit 1-A, Edelson PC has significant experience prosecuting consumer class actions and complex litigation of a similar nature, scope, and complexity to the instant case.

5.     Edelson PC and its attorneys have been appointed Class Counsel in numerous actions throughout the country.

6.     To date, Edelson PC and its attorneys have diligently investigated, prosecuted,

1

and dedicated substantial resources to the claims in this matter, and will continue to do so throughout its pendency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this February 5th, 2016 at Chicago, Illinois.

_____
Ari J. Scharg

# EXHIBIT 1-A

## EDELSON PC FIRM RESUME

EDELSON PC is a plaintiffs' class action and commercial litigation firm with attorneys in Illinois and California.

Our attorneys have been recognized as leaders in these fields by state and federal courts, legislatures, national and international media groups, and our peers. Our reputation has led state and federal courts across the country to appoint us lead counsel in many high-profile cases, including in cutting-edge privacy class actions against comScore, Netflix, Time, Microsoft, and Facebook; Telephone Consumer Protection Act class actions against technology, media, and retail companies such as Google, Twentieth Century Fox, Simon & Schuster, and Steve Madden; data security class actions against LinkedIn, Advocate Hospitals, and AvMed; banking cases against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec and Ascentive; mobile content class actions against all major cellular telephone carriers; and product liability cases, including the Thomas the Tank Engine lead paint class actions and the tainted pet food litigation.

We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other consumer issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a focus on consumer technology. Our firm is "known for securing multi-million dollar settlements against tech giants" (Chicago Daily Law Bulletin, September 2013), and has been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *See In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. Dec. 10, 2010) (order appointing us interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing us sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions. . . ."). Law360 has called us a "Titan of the Plaintiffs Bar," a "Plaintiffs Class Action powerhouse" and a "Privacy Litigation Heavyweight." We have also been recognized by courts for our uniquely zealous and efficient approach to litigation, which lead the then-Chief Judge of the United States Court for the Northern District of Illinois to praise our work as "consistent with the highest standards of the profession" and "a model of what the profession should be. . . ." *In re Kentucky Fried Chicken Coupon Marketing & Sales Practices Litig.*, No. 09-cv-7670, MDL 2103 (N.D. Ill. Nov. 30, 2011). Likewise, in appointing our firm interim co-lead in one of the most high profile banking cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010). After hard fought litigation, that case

settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines. In addition, the firm is uniquely able to try cases, especially those involving sophisticated technology issues. Lead by a deputy chief of the cybercrime unit for the United States Attorney's Office, our trial team has handled both jury and bench trials on issues ranging from general consumer matters to complex cyber crimes (including hacking and cyber intrusions, data breaches, and large-scale identity theft cases) that rested on sophisticated computer forensics.

We have several sub-specialties within our plaintiffs' class action practice:

PRIVACY/DATA LOSS

### Data Loss/Unauthorized Disclosure of Data

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The court has finally approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved.

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Preservation of Personal Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer. In January and July of 2015, final approval was

granted to a settlement reached in the *Bauer Publishing* matter and an adversarial class was certified in the *Time* case, respectively.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litig.*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the Internet.

### Telephone Consumer Protection Act

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.): Lead counsel in class action alleging that defendant violated federal law by making unsolicited prescription reminder calls. Won reconsideration of dismissal based upon whether provision of telephone number constituted consent to call. Case settled for $11 million.

- *Hopwood v. Nuance Communications, Inc., et al.*, No. 13-cv-2132 (N.D. Cal.): Lead counsel in class action alleging that defendants violated federal law by making unsolicited marketing calls to consumers

nationwide. $9.245 million settlement provided class members option to claim unprecedented relief based upon total number of calls they received.

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill) Co-lead counsel in $7 million text spam settlement.

CONSUMER TECHNOLOGY

### Fraudulent Software

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases

alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No. 11-cv-01785 (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763 (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555 (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738 (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino

caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and CEO of EDELSON PC. He has been recognized as one of the nation's leading class action lawyers, especially in the areas of privacy, technology, and consumer advocacy. His notable cases include ones involving the national banks' suspensions of home equity lines of credit in the aftermath of the housing collapse, which resulted in the restoration of billions of dollars of consumer credit lines. He has developed much of the positive law under the Telephone Consumer Protection Act, especially in the area of text message spam, resulting in settlements collectively worth over a hundred millions of dollars and earning him the moniker, "the Spam Slammer." Jay has been recognized as a "pioneer" in the emerging field of electronic privacy, having established key precedent in cases throughout the country and reaching some of the most important settlements in this space. Based primarily on his success in bringing consumer technology class actions, the national press has dubbed Jay and his firm the "most feared" litigators in Silicon Valley and, according to the New York Times, tech's "babyfaced … boogeyman." The international press has called Jay one of the world's "profiliertesten (most prominent)" privacy class action attorneys.

In addition to complex defense-side litigation, which he handles only in select cases, Jay also offers strategic support to start-ups, including several that have become national brands.

Jay is a frequent speaker and writer on class action issues, the practice of law more generally, and training and law firm management — the latter earning him recognition by the ABA as one of "the most creative minds in the legal industry". He is an adjunct professor at Chicago-Kent School of Law, where he has taught seminars on class actions and negotiation. He has written a blog for Thomson Reuters, called Pardon the Disruption, where he focused on ideas necessary to reform and reinvent the legal industry.

**RYAN D. ANDREWS** is a Partner at EDELSON PC. He presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million dollars in refunds to consumers, including: *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.); *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.); *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.); and *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.).

Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); and *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. Mar. 26, 2014).

Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is the Managing Partner of Edelson PC. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation. In the class action context, Rafey has extensive experience both prosecuting and defending class actions.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, and has achieved landmark settlements involving the telecom industry worth hundreds of millions of dollars, including nationwide settlements in the cases *Pimental, et al. v. Google, Inc.*, No. 11-cv-2585 (N.D. Cal.); *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Williams v. Motricity, Inc., et al.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

Rafey's plaintiff's class action practice also focuses on consumer privacy issues and some of his most notable accomplishments include nationwide settlements reached with companies such as

Netflix (*In re Netflix Privacy Litig.*, No. 11-cv-379 (N.D. Cal.)) and RockYou (*Claridge v. RockYou, Inc.*, No. 09-cv-6030 (N.D. Cal.)). Rafey also led the effort to secure adversarial class certification of what is believed to be the largest privacy class action in the history of U.S. jurisprudence in the case of *Dunstan, et al. v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successfully litigated numerous multi-million dollar cases, including several "bet the company" cases. And, with respect to the defense of class action, Rafey's practice focuses mainly on the defense of corporate clients facing wage and hour lawsuits brought under the Fair Labor Standards Act.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. A native of Colorado, Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at EDELSON PC where he focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, groundbreaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Kramer v. Autobytel, Inc.*, No. 10-cv-2722-CW (N.D. Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v. Burger King Corp.*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Outside of consumer class actions, Chris actively advises technology related startups, including providing compliance and marketing guidance, as well as hands-on concept and business development.

Prior to joining EDELSON PC, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating *magna cum laude* from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**ALEXANDER T.H. NGUYEN** is a Partner at EDELSON PC and leads the firm's Complex Trials Team.

Before joining the firm, Alex served as federal prosecutor and deputy chief of the cybercrime unit for the United States Attorney's Office in the Eastern District of Virginia in Alexandria, Virginia. In that capacity, he investigated, prosecuted, supervised, and tried a wide range of computer crime and intellectual property matters, including hacking and cyber intrusions, data breaches, intellectual property violations, large-scale identity theft and online fraud, national security, trade secrets, and online child exploitation matters. Before that, he also served as a federal prosecutor for the United States Attorney's Office in the Eastern District of Pennsylvania in Philadelphia, Pennsylvania, where he prosecuted criminal matters, including tax evasion, political corruption, fraud, money laundering, terrorism, narcotics, and violent crime.

In 2010 and 2011, he served in the Office of the White House Counsel to help manage and implement key White House law and public policy initiatives, helped respond to congressional oversight investigations, provided ethics advice to senior officials, and assisted with political appointments.

Alex graduated *magna cum laude* from Harvard University and received his J.D. from Yale Law School. He has previously served on the board of the Asian Pacific American Bar Association Educational Fund and was the president of the Vietnamese American Bar Association in Washington, D.C.

**ROGER PERLSTADT** is a Partner at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. He has briefed and argued appeals and motions in both federal and state appellate courts.

Prior to joining the firm, Roger was a law clerk to United States District Court Judge Elaine E. Bucklo, an associate at a litigation boutique in Chicago, and a Visiting Assistant Professor at the University of Florida Levin College of Law. He has published articles on the Federal Arbitration Act in various law reviews.

Roger has been named a Rising Star by *Illinois Super Lawyer Magazine* four times since 2010.

Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

**EVE-LYNN J. RAPP** is a Partner at EDELSON PC, where she focuses her practice on consumer technology class actions, with a particular emphasis on cell phone telephony and Telephone Consumer Protection Act ("TCPA") cases and "negative option" enrollment consumer fraud

cases. She also regularly handles plaintiff's side employment class actions, including federal Fair Labor Stands Act cases and their state law counterparts. Eve is the hiring partner for the firm's Chicago office.

Eve has helped lead approximately 20 TCPA class actions, including Birchmeier v. Caribbean Cruise Line, Inc. et al., No. 12-cv-04069 (N.D. Ill.), where she secured the largest adversarial TCPA class in this nation's history. She is also lead counsel in one of the few "Do Not Call" TCPA cases to settle, resulting in a multi-million dollar settlement and affording class members with as much as $5,000 individually. Eve has also prosecuted TCPA cases on an individual basis in arbitrations, winning six-figure settlements.

She has led over a half-dozen consumer fraud and "negative option" enrollment cases, against a variety of industries, including e-cigarette sellers, the on-line gaming companies, and electronic and sport products distributors.

Eve is also leading a series of employment class actions involving the cell tower industry, securing a six-figure settlement for the named plaintiff.

In a nationally publicized products liability case, Eve help secure a reversal from the United States Supreme Court, paving the way for hundreds of thousands of people to litigate their claims of deceptive marketing.

In 2015, Eve was selected as an Illinois Emerging Lawyer by Leading Lawyers.

Eve received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, she was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York. Eve graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

Eve is actively involved with the Chicago Lawyers' Committee for Civil Rights Under Law, Inc.'s Settlement Assistance Project where she represents a number of pro bono clients for settlement purposes.

**BENJAMIN H. RICHMAN** is the Managing Partner of the Chicago Office of EDELSON PC. He handles plaintiffs'-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0

companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is also the director of EDELSON PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC and leads the firm's Privacy and Data Security Litigation Group. He handles technology-related class actions, focusing mainly on cases involving privacy and data security issues, including the illegal collection, storage, and disclosure of personal information and text message spam. Ari has been appointed class counsel by state and federal courts in several nationwide class actions, including *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich. July 27, 2015); *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.); *In re: LinkedIn User Privacy Litigation*, No. 5:12-cv-03088 (N.D. Cal.); *Coffman v. Glide Talk, Ltd.*, No. 14 CH 08513 (Cir. Ct. Cook Cnty, Ill.); *Webb v. Cleverbridge, et al.*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Grant v. Commonwealth Edison Company*, No. 13-cv-8310 (N.D. Ill.), and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013, 2014, 2015) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for THE JOHN MARSHALL LAW REVIEW and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**COURTNEY BOOTH** is an Associate at EDELSON PC where her practice focuses on consumer and tech-related class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was a 2013 Member of the National Order of Scribes.

Courtney focuses her public service efforts on providing settlement-related assistance to *pro se* plaintiffs. In one of her recent *pro bono* cases, the Court recognized Courtney's efforts and "express[ed] its appreciation" to her, stating that "[t]he work she has done for the plaintiff is of the highest order and the way she has conducted herself in court is to be commended." *See Sroga v. City of Chicago*, No. 12-cv-9288, Dkt. 65 (N.D. Ill. Aug. 6, 2014).

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**JONATHAN W. HODGE** is an Associate at EDELSON PC where his practice focuses on complex consumer class actions.

Prior to joining EDELSON PC, Jonathan handled complex commercial litigation at an Am Law 100 defense firm, where he drove successful outcomes in matters with as much as $100,000,000 in controversy. Previously, Jonathan served as a consultant for a tech incubator where he helped clients form new business based on patent-protected technologies developed at the University of Michigan. He also served in the accounting department of Nucor Steel-Hertford, where his IT skillsets helped him largely automate the monitoring of the largest cost at a multibillion-dollar division of America's largest steel company.

Jonathan received his J.D. from the University of Michigan Law School. While in law school, Jonathan participated in the Campbell Moot Court and the Frank Murphy Society 1L Oral Advocacy Competition. He was awarded Legal Practice Honors for performing in the top 20% of his first-year legal research and writing classes.

Jonathan graduated *summa cum laude* from Chowan University, earning his B.S. in Business Administration with a double concentration in Information Systems and Accounting.

**JAMIE J. R. HOLZ** is an Associate at EDELSON PC where his practice focuses on tech and privacy-related class actions.

Jamie received his J.D., *magna cum laude*, from The John Marshall Law School. While attending law school, Jamie participated in The John Marshall Law Review and the Moot Court Honors Council, and was a Board Member for The John Marshall Trial Advocacy and Dispute Resolution Honors Board. Jamie competed nationally on several alternative dispute resolution

teams, was the Herzog Moot Court Competition champion and a two-time Triple Crown Alternative Dispute Resolution Competition champion.

Jamie was an extern to the Honorable Arlander Keys in the United States District Court for the Northern District of Illinois and with the Cook County State's Attorney's Office. Jamie completed his time at John Marshall as a David R. Sargis Scholar and walked away with CALI awards in property law and civil procedure.

Prior to law school, Jamie attended Loras College where he earned a B.A. in Creative Writing and English Literature.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC where his practice focuses on technology and privacy class actions.

Nick has been appointed class counsel in multiple class actions that have resulted in tens of millions of dollars in refunds to consumers, including: *In re LinkedIn User Privacy Litig.*, No. 12-cv-3088 (N.D. Cal.); *Halaburda v. Bauer Publishing Co., LP*, No. 12-cv-12831 (E.D. Mich.); *Dunstan v. comScore*, No. 11-cv-5807 (N.D. Ill.); and *In re Netflix Privacy Litig.*, No. 11-cv-379 (N.D. Cal.).

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business. His student Comment, which examines the legal issues that may arise from National Hockey League players' participation in the 2014 Olympic Winter Games, appears in Vol. 32, No. 3A of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law and played on the school's rugby team.

**J. AARON LAWSON** is an Associate at EDELSON PC where his practice focuses on appeals and complex motion practice.

Before coming to Edelson, Aaron served for two years as a Staff Attorney for the United States Court of Appeals for the Seventh Circuit, handling appeals involving a wide variety of subject matter, including consumer-protection law, employment law, criminal law, and federal habeas corpus. While at the University of Michigan Law School, Aaron served as the Managing Editor for the Michigan Journal of Race & Law, and participated in the Federal Appellate Clinic. In the clinic, Aaron briefed a direct criminal appeal to the United States Court of Appeals for the Sixth Circuit, and successfully convinced the court to vacate his client's sentence.

**TODD LOGAN** is an Associate at Edelson PC, where he focuses on privacy and technology-related class actions.

**DAVID I. MINDELL** is an Associate at EDELSON PC where he helps direct a team of attorneys and engineers in investigating and litigating cases involving complex tech fraud and privacy violations. His team's research has led to lawsuits involving the fraudulent development, marketing, and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, and the Bitcoin industry. On the other side, David also serves as a consultant to a variety of emerging technology companies.

Prior to joining EDELSON PC, David co-founded several tech, real estate, and hospitality related ventures, including a tech startup that was acquired by a well-known international corporation within its first three years. David has advised tech companies on a variety of legal and strategic business-related issues, including how to handle and protect consumer data. He has also consulted with startups on the formation of business plans, product development, and launch.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has spoken to a wide range of audiences about his investigations and practice.

**AMIR MISSAGHI** is an Associate at EDELSON PC where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**BEN THOMASSEN** is an Associate at EDELSON PC where he focuses on consumer litigation, with an emphasis on privacy and data breach class actions.

Ben's work at the firm has achieved significant results for classes of consumers. He has been appointed as class counsel in several high profile cases, including, for example, *Harris v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.) (appointed class counsel in case against data analytics company, which is estimated to be the largest privacy class action certified on adversarial basis and resulted in $14MM settlement). Ben has also played critical and leading roles in developing, briefing, and arguing novel legal theories on behalf of his clients, including by delivering the winning oral argument to the Eleventh Circuit in the seminal case of *Resnick, et al. v. AvMed, Inc.*, No. 10-cv-24513 (S.D. Fla.) (appointed class counsel in industry-changing data breach case, which obtained a landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred) and recently obtaining certification of a class of magazine subscribers in *Coulter-Owens v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.) (achieved adversarial certification in privacy case brought by class of magazine subscribers against magazine publisher under Michigan's Preservation of Personal Privacy Act). His cases have resulted in millions of dollars to consumers.

Ben graduated *magna cum laude* from Chicago-Kent College of Law, where he also earned a certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. He also served as Vice President of Chicago-Kent's Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received a Master of Arts degree from the University of Chicago and his Bachelor of Arts degree, *summa cum laude*, from St. Mary's College of Maryland.

**ALEXANDER G. TIEVSKY** is an Associate at Edelson PC, where he concentrates on complex motion practice and appeals in consumer class action litigation.

He received his J.D. from the Northwestern University School of Law, where he graduated from the two-year accelerated J.D. program. While in law school, Alex was Media Editor of the Northwestern University Law Review. He also worked as a member of the Bluhm Legal Clinic's Center on Wrongful Convictions. Alex maintains a relationship with the Center and focuses his public service work on seeking to overturn unjust criminal convictions in Cook County.

Alex's past experiences include developing internal tools for an enterprise software company and working as a full-time cheesemonger. He received his A.B. in linguistics with general honors from the College of the University of Chicago.

**SAMUEL LASSER** is Of Counsel to EDELSON PC.

Samuel graduated with a degree in history from the University of Michigan (Ann Arbor) and received his J.D. from the University of San Francisco.

**SHAWN DAVIS** is the Director of Digital Forensics at Edelson PC, where he leads a technical team in investigating claims involving privacy violations and tech-related abuse. His team's investigations have included claims arising out of the fraudulent development, marketing, and sale of computer software, unlawful tracking of consumers through digital devices, unlawful collection, storage, and dissemination of consumer data, large-scale data breaches, receipt of unsolicited communications, and other deceptive marketing practices.

Prior to joining Edelson PC, Shawn worked for Motorola Solutions in the Security and Federal Operations Centers as an Information Protection Specialist. Shawn's responsibilities included network and computer forensic analysis, malware analysis, threat mitigation, and incident handling for various commercial and government entities.

Shawn has been a member of the adjunct faculty of the School of Applied Technology at the Illinois Institute of Technology (IIT) since December of 2013. Additionally, Shawn is a faculty member of the IIT Center for Cyber Security and Forensics Education which is a collaborative space between business, government, academia, and security professionals. Shawn's contributions aided in IIT's designation as a National Center of Academic Excellence in Information Assurance by the National Security Agency.

Shawn graduated with high honors from the Illinois Institute of Technology with a Masters of Information Technology Management with a specialization in Computer and Network Security. During graduate school, Shawn was inducted into Gamma Nu Eta, the National Information Technology Honor Society.

# Exhibit C

**(Filed under Seal)**

# Exhibit D

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(2/28/11) CCG N001

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISION

2018CH01716
CALENDAR/ROOM 10
TIME 00:00
Class Action

No. _____

Christine Dancel, individually and on behalf of all others similarly situated,

(Name all parties)

v.

Groupon, Inc., a Delaware corporation,

Groupon, Inc.

Corporation Trust Center, 1209 Orange St

Wilmington, DE 19801

## ◉ SUMMONS ⃝ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ◉ Richard J. Daley Center, 50 W. Washington, Room _____ 802 _____, Chicago, Illinois 60602

- ⃝ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

- ⃝ District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- ⃝ District 4 - Maywood
  1500 Maybrook Ave.
  Maywood, IL 60153

- ⃝ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

- ⃝ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

- ⃝ Child Support
  28 North Clark St., Room 200
  Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Edelson PC

Atty. for: Plaintiff, Christine Dancel

Address: 350 North LaSalle Street, Suite 1300

City/State/Zip: Chicago, Illinois 60654

Telephone: (312) 589-6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

DOROTHY BROWN FEB 0 5 2018

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)  (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# Exhibit E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and
on behalf of all others similarly situated,

    Plaintiff,

  v.

GROUPON, INC., a Delaware Corporation,

    Defendant.

No. 16 CH 01716

Judge Thomas R. Allen

2016 NOV 18  PM 4: 10

DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## ANSWER AND AFFIRMATIVE DEFENSES
## TO COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Groupon, Inc. ("Groupon"), by its attorneys, Novack and Macey LLP, as and

for its Answer and Affirmative Defenses to the Complaint and Demand for Jury Trial (the

"Complaint") filed by Christine Dancel ("Plaintiff"), states as follows:

### NATURE OF THE ACTION

1.  Groupon is a public company that generates over one billion dollars of revenue
each quarter by selling vouchers known as "Deals." Groupon's Deals are redeemable for
discounts at participating businesses likes restaurants and stores. Groupon sells its Deals
exclusively through its website, www.Groupon.com.

**ANSWER:**  Defendant admits that it is a public company.  Defendant admits that, as one part of

its business, customers can purchase vouchers that are redeemable at participating businesses.

Defendant denies the remaining allegations of paragraph 1.

2.  Like many e-commerce websites, Groupon creates unique landing webpages for
each Deal currently for sale. On these landing pages, Groupon advertises and promotes the Deal
by, among other things, showing photographs of individuals who are seemingly endorsing it.

**ANSWER:**  Defendant admits that, for certain of its deals, there are unique landing webpages

that provide information about the particular deal.  Defendant denies the remaining allegations of

paragraph 2.

3.      The individuals displayed on Defendant's Deal pages, though, have no idea that their pictures and likenesses are being used to promote and endorse Defendant's products.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 3.

4.      Indeed, the photographs that Groupon parades on its Deal pages are actually personal pictures belonging to users of Instagram (an un-related third-party social network) have uploaded to their personal accounts. The only connection that these personal pictures have to Groupon is that the individuals "tagged" their photographs on Instagram with the name of the restaurant or store featured in the Deal being offered.

**ANSWER:** Defendant denies the allegations of paragraph 4.

5.      Nonetheless, Groupon "scraped" *(i.e.,* secretly collected) the tagged personal photographs from Instagram and used them to promote Deals on its website.

**ANSWER:** Defendant denies the allegations of paragraph 5.

6.      By using these individual's photographs and likenesses without their written consent for its own commercial gain (i.e., to promote and sell its Deals), Groupon has violated and continues to violate the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*

**ANSWER:** Defendant denies the allegations of paragraph 6.

## PARTIES

7.      Plaintiff Christine Dancel is a natural person and a citizen of the State of Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 7.

8.      Defendant Groupon, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 600 West Chicago Avenue, Chicago, Illinois 60654. Groupon does business through the State of Illinois, Cook County, and throughout the United States.

**ANSWER:** Defendant admits the allegations of paragraph 8.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Groupon conducts business transactions in Illinois, has committed tortious acts in Illinois, is registered to conduct business in Illinois, and is headquartered in Illinois.

**ANSWER:** Defendant admits that it: (a) conducts business transactions in Illinois; (b) is registered to conduct business in Illinois; and (c) is headquartered in Illinois. Defendant denies that it has committed tortious acts in Illinois, denies that the alleged claims have any merit, and denies that Plaintiff is entitled to any relief. The allegation that the Court has jurisdiction over Defendant calls for a legal conclusion to which no answer is required.

10.     Venue is proper in Cook County because Defendant maintains its headquarters in Cook County, conducts business transactions in Cook County, and the cause of action arose, in substantial part, in Cook County.

**ANSWER:** Defendant admits that it maintains its headquarters in Cook County and conducts business transactions in Cook County. Defendant denies that: (a) it has committed any wrongdoing; (b) that the alleged claims have any merit; and (c) that Plaintiff is entitled to any relief. The allegation that venue is proper in Cook County calls for a legal conclusion to which no answer is required.

## COMMON FACTUAL ALLEGATIONS

11.     In 1999, the Illinois Legislature recognized that every individual has the "right to control and to choose whether and how [his or her] identity [is used] for commercial purposes," 735 ILCS 1075/10, and as a result, passed the IRPA to both protect individual privacy rights and prevent the exploitation of individuals' images for another's commercial gain.

**ANSWER:** Defendant neither admits nor denies the allegations of paragraph 11 and states that the allegations of paragraph 11 calls for a legal conclusion to which no answer is required.

12.     The Act protects consumers from the unauthorized use of their name, signature, photograph, image, likeness, or voice for commercial purposes.

**ANSWER:** Defendant neither admits nor denies the allegations of paragraph 12 and states that the allegations of paragraph 12 calls for a legal conclusion to which no answer is required.

13. Indeed, the Act states that "a person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person...." 735 ILCS 1075/30. And notably, the IRPA does not require the person seeking relief under the Act to be a public figure.

**ANSWER:** Defendant neither admits nor denies the allegations of paragraph 13 and states that the allegations of paragraph 13 calls for a legal conclusion to which no answer is required.

14. Groupon advertises and sells thousands of Deals in the State of Illinois. When a consumer seeks out a new Deal, they are guided to a Deal-specific offer page on the Groupon website. These offer pages include information such as the name, location, and description of the business being promoted, the terms of the offer, and photographs provided by the business (e.g., photos of food). *See* Figures 1 and 3.

**ANSWER:** Defendant admits that it sells thousands of Deals in the State of Illinois and advertises its business in Illinois, and Defendant admits that in some instances, when a consumer seeks out a new Deal, there may be a Deal-specific offer page on the Groupon website and that these pages typically would include the name, location and description of the business and terms of the offer, and sometimes the pages include photographs provided by the business. Except as specifically admitted, denied.

15. One of the primary components of each of Defendant's Deal offer pages is the "Photos" section. Here, Defendant inserts many photographs of consumers that were purportedly taken at the location of the offered business. Figure 4, below, shows a group of photographs displayed by Defendant on its Philly G's Deal page that appear to be taken at Philly G's. *See* Figure 4.

**ANSWER:** Defendant admits that Figure 4 shows certain Instagram Photos publicly posted by certain Instagram Users. Defendant denies the remaining allegations of paragraph 15.

16. Groupon draws these photos from Instagram through Instagram's "API" (application programming interface) — a computer protocol that allows for the interconnection

4

of different services. Groupon makes an Instagram API request for photographs corresponding with the location of the business featured in the Groupon Deal (i.e., Philly G's) and Instagram returns with a batch of photos matching the criteria.

**ANSWER:** Defendant denies the allegations of paragraph 16.

17. The consumers who own and appear in the Instagram photos used by Groupon have previously posted them (through their own personal accounts) to the Instagram social network. Consumers post these photos for the purpose displaying them to the "followers" of their personal Instagram profiles. The photos are not tagged with "Groupon" or marked in any other way to convey that the people appearing in the picture utilized the Groupon Deal.

**ANSWER:** Defendant denies the allegations to the extent they suggest "consumers own" the

"Instagram photos." Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations of paragraph 17.

18. In fact, the individuals appearing in the Instagram photos did not provide consent for their pictures to appear on Groupon's website for commercial purposes. And, they did not give consent to Instagram to share their photos with Groupon for use third-party advertisements for commercial purposes.

**ANSWER:** Defendant denies the allegations of paragraph 18.

19. Groupon's incorporation of Instagram user photos into Deal advertisements serves a fundamental part of its business model. Indeed, a core part of Groupon's advertising strategy is to convince consumers to make the purchase *because other consumers have already done the same*. Groupon is well aware of the impact social influence has on consumers and seeks to capitalize on that marketing theory by using the conduct of other consumers to convert new customers.[1]

**ANSWER:** Defendant denies the allegations of paragraph 19 and lacks knowledge or

information sufficient to form a belief as to the truth of the allegations contained in footnote 1.

---

[1] *See Group-Buying Deal Popularity,* Xueming Luo, *et al.,* American Marketing Association Journal of Marketing (2013) (noting the "bandwagon" effect that group-buying merchants, like Groupon, exploit and stating that "consumers seem to be influenced by deal popularity at both the purchase and redemption phases . . . merchants should encourage social interactions among consumers, since social influence-related referral intensity and group consumption can amplify the effects of deal popularity on consumer purchase and redemption decisions . . the social influence literature [citation omitted] suggests that ... *[t]he more desirable and popular a deal appears, the more likely a consumer may purchase it.")* (emphasis added).

20.     As such, Groupon publishes consumers' Instagram photographs for the sole purpose of promoting and advertising their Deals. Defendant placed the photos on the Deal page, proximate to the details of the Deal offer and the "Tips" section (which contain potentially useful facts by *actual* Groupon users), to cause its potential customers to think that people in the photos are satisfied Groupon customers even though they are not.

**ANSWER:**  Defendant denies the allegations contained of paragraph 20.

21.     By designing the offer page and using Instagram photos in this way, Groupon intentionally creates the false impression that the consumers appearing in the photos are endorsing, or have at least purchased, the Deal itself. Beyond simply having consumers' pictures appear on the Groupon advertisement without notice or permission, the pictures themselves contain a hyperlink to each individual's personal Instagram account and social network profile.

**ANSWER:**  Defendant denies the allegations contained in the first sentence of paragraph 21.

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of paragraph 21.

22.     Therefore, Groupon has, and continues to, misappropriate the photographs of thousands of individuals for its own commercial gain.

**ANSWER:**  Defendant denies the allegations contained in paragraph 22.

23.     Not surprisingly, Groupon's conduct of utilizing individual's Instagram photos as part of its advertisement violate Instagram's own terms of service. Specifically, Instagram states in its API Platform Terms and Conditions, FAQs, and other information guides:

> 13.     Obtain a person's consent before including their User Content in any ad.

(Figure 5.)

> 8.     Licensed Uses and Restrictions:  The Instagram APIs are owned by Instagram and are licensed to you on a worldwide (except as limited below), non-exclusive, non-sublicenseable basis in accordance with these terms.  Your license to the Instagram APIs continues until it is terminated by either party.  Please note that User Content is owned by users and not by Instagram.  All rights not expressly granted to you are reserved by Instagram.

(Figure 6.)

> Does Instagram let advertisers use my photos or videos?

6

No. You own your own photos and videos. Advertising on Instagram doesn't change this.

(Figure 7.)

Before you start using the API Platform, we have a few guidelines that we'd like to tell you about. Please make sure to read the full Platform Policy. Here's what you'll read about:

1. Instagram users own their media. It's your responsibility to make sure that you respect that right.

2. You cannot use "Insta", "gram" or "Instagram" in your company or product name.

3. You cannot replicate the core user experience of the Instagram apps or web site. For example, do not build a media viewer.

4. You cannot use the API Platform to crawl or store users' media without their express consent.

5. Do not abuse the API Platform, automate requests, or encourage unauthentic behavior. This will get your access turned off.

(Figure 8.)

**ANSWER:** Defendant admits that Plaintiff has quoted selective portions of materials to which Plaintiff cites, but denies the remaining allegations contained in paragraph 23.

24. As a result Plaintiff, on behalf of herself and a Class of similarly situated Illinois residents, seeks relief for Groupon's past and continuing violations of the IRPA, including (1) an injunction requiring Groupon to cease using Instagram user's photographs and likenesses to advertise and sell Groupon Deals without consent, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of same, or statutory damages to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

**ANSWER:** Defendant admits that the Complaint purports to seek relief on behalf of herself and a Class, including injunctive relief, damages, punitive damages and an award of costs and reasonable attorneys' fees. Defendant denies that the alleged claims have any merit and denies

that Plaintiff is entitled to any relief. Defendant denies that Plaintiff may maintain this action as

a class action.

## FACTS SPECIFIC TO PLAINTIFF DANCEL

25.     In or around August 2015, Plaintiff visited "Philly G's" restaurant. 'While there, Plaintiff took a photo of herself and uploaded it to her Instagram profile. Plaintiff Dancel tagged location data to her photograph that indicated she has taken the photograph at "Philly G's" restaurant in Vernon Hills, Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 25.


26.     Plaintiff does not have a Groupon account and did not purchase or use a Groupon for Philly G's. Likewise, the caption and description of her photo did not mention Groupon in any way.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 25.


27.     Yet, unbeknownst to Plaintiff, after uploading the photograph to her personal Instagram account, Groupon requested her photograph from Instagram and displayed it on its Philly G's Deal offer page (the bottom right corner in <u>Figure 9,</u> below). The Groupon Deal offered a voucher: "$35 for $60 Worth of Generations-Old Italian Cuisine at Philly G's."

**ANSWER:** Defendant admits it offered a "$35 for $60 Worth of Generations - Old Italian

Cuisine at Philly G's" voucher. Defendant denies the remaining allegations in paragraph 27.


28.     Plaintiff never provided her consent to Groupon to use her photographs, images, and/or likeness on its website for any reason, let alone to advertise and sell its Deals.

**ANSWER:** Defendant denies the allegations in paragraph 28.


## CLASS ALLEGATIONS

29.     Plaintiff brings this action, pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

All Illinois residents (1) who maintain an Instagram account, and (2) whose photograph(s) from such Instagram account have appeared on a Groupon Deal offer page.

**ANSWER:** Defendant admits that the Complaint purports to be brought pursuant to 735 ILCS 5/2-801 and that it purports to define the class as set forth in paragraph 29. Defendant denies that the alleged claims have any merit and denies that Plaintiff is entitled to any relief. Defendant denies that Plaintiff may maintain this action as a class action.

30.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

**ANSWER:** Defendant admits that the Complaint purports exclude from the purported class the persons set forth in paragraph 30. Defendant denies that the alleged claims have any merit and denies that Plaintiff is entitled to any relief. Defendant denies that Plaintiff may maintain this action as a class action.

31.     **Numerosity:** Upon information and belief, there are over one thousand members in the Class such that joinder of all members is impracticable. Class members can be easily identified through Defendant's records.

**ANSWER:** Defendant denies the allegations in paragraph 31. Defendant denies that Plaintiff may maintain this action as a class action.

32.     **Commonality And Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. Among the questions of law and fact common to the Class are:

a.      Whether Groupon displayed Class members' photographs and likenesses on its Deal offer pages;

9

b.      Whether Class members provided their written consent to Groupon to display their photographs and likenesses on its Deal offer pages;

c.      Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1 *et. seq.;* and

d.      Whether Plaintiff and the Class are entitled to injunctive relief.

**ANSWER:**  Defendant denies the allegations in paragraph 32. Defendant denies that Plaintiff may maintain this action as a class action.

33.      **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interest of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to that of the Class, and Defendant has no defenses unique to the Plaintiff.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33. Defendant denies that Plaintiff may maintain this action as a class action.

34.      **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief for Defendant's misconduct. Even if each member of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expenses to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**  Defendant denies the allegations in paragraph 34. Defendant denies that Plaintiff may maintain this action as a class action.

## FIRST CAUSE OF ACTION
### Violation Of The Illinois Right Of Publicity Act 765 ILCS 1075/1, *et seq.*
### <u>(On Behalf Of Plaintiff And The Class)</u>

35.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:** Defendant incorporates and realleges the answers to paragraphs 1 through 34 above as and for its answer to paragraph 35.

36.    The Illinois Right of Publicity Act (765 ILCS 1075/1 *et. seq.)* prohibits using a person's name, photograph, image, or likeness for the sale or advertisement of goods, merchandise, products, and services without written consent.

**ANSWER:** Defendant neither admits nor denies the allegations of paragraph 36 and states that the allegations of paragraph 36 calls for a legal conclusion to which no answer is required.

37.    Groupon owns and operates a website that sells products, known as Deals. Defendant sells its Deals through unique offer pages at www.Groupon.com, and consumers can redeem Groupon Deals for additional products and services.

**ANSWER:** Defendant denies that this paragraph accurately describes Defendant's business and therefore denies the allegations in paragraph 37.

38.    Groupon intentionally requested Plaintiffs and Class members' Instagram photographs from their personal Instagram accounts and displayed them on its Deal offer pages. Groupon's placement of these photographs was meant to directly aid in the sale of its Deals and convey that the persons appearing in the photos were endorsing and/or had used the Deals.

**ANSWER:** Defendant denies the allegations in paragraph 38.

39.    A reasonable consumer viewing the Groupon offer page would be led to believe that the persons appearing in the Instagram photos had used a Groupon Deal at that location and/or were otherwise promoting the Deal.

**ANSWER:** Defendant denies the allegations in paragraph 39.

40.    Defendant did not obtain the written consent from Plaintiff and members of the Class before using their photographs, images, and likenesses. In fact, Groupon has not notified Plaintiff or the members of the Class that their photographs were and are being displayed on its website for commercial purposes.

**ANSWER:** Defendant denies the allegations in the first sentence of paragraph 40. Defendant admits that it did not specifically inform Plaintiff that her photograph could be viewed through the Instagram API on the Deal Page that she complains about. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 40.

41.     Defendant has systematically and repeatedly used the photographs, images, and likenesses of Plaintiff and the members of the Class for the commercial purpose of promoting and selling Groupon Deals.

**ANSWER:** Defendant denies the allegations of paragraph 41. Defendant denies that Plaintiff may maintain this action as a class action.

42.     Given Groupon's flagrant violations of the IRPA, Plaintiff and the Class are entitled to (1) an injunction requiring Groupon to cease using Instagram user's photographs and likenesses to advertise and sell Groupon Deals, (2) the greater of an award of actual damages, including profits derived from the unauthorized use of same, or statutory damages of $1,000 per violation to the members of the Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

**ANSWER:** Defendant denies the allegations of paragraph 42. Defendant denies that Plaintiff may maintain this action as a class action.

## AFFIRMATIVE DEFENSES

By listing any matter as an affirmative defense, Defendant does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law. Moreover, by setting forth the following affirmative defenses, Defendant does not waive the right to assert additional defenses at a later date.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to maintain this action and will not and cannot fairly and adequately protect the interests of the purported class because she has suffered no legally cognizable injury.

## SECOND AFFIRMATIVE DEFENSE

Because Plaintiff consented in writing to the use of her photographs, Plaintiff may not maintain a claim under the IRPA, lacks standing to represent the putative class, and will not and cannot fairly and adequately protect the interests of the purported class.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or part by the doctrine of estoppel because she consented to any use of her Photographs by agreeing in writing to the use of her photographs.

## FOURTH AFFIRMATIVE DEFENSE

The purported class is not so numerous that joinder of all members is impractical.

## FIFTH AFFIRMATIVE DEFENSE

This action may not be maintained as a class action because there are questions of fact and law that must be resolved on an individual basis for each member of the putative class and, therefore, the common questions do not predominate over individual questions. These individual issues include issues as to both liability and damages.

## SIXTH AFFIRMATIVE DEFENSE

Maintenance of this action as a class action is inconsistent with the legislative intent of the Illinois Right Of Publicity Act 765 ILCS 1075/1, *et seq.* ("IRPA") in that the Illinois legislature intended that claims under the IRPA proceed as individual actions.

## SEVENTH AFFIRMATIVE DEFENSE

A class action is an inappropriate method for the fair and efficient adjudication of the instant controversy.

## EIGHTH AFFIRMATIVE DEFENSE

The statutory damages provision of the IRPA violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the statutory damages proscribed by the IRPA, especially in the context of a class action, are excessive, severe and wholly disproportionate to the *de minimis* harm allegedly suffered by Plaintiff and any putative class member.

## NINTH AFFIRMATIVE DEFENSE

The IRPA violates the First and Fourteenth Amendment to the United States Constitution because the IRPA: (a) is facially overbroad in that it purports to prohibit numerous forms of protected speech; and (b) as applied in this case, purports to prohibit speech despite the fact that Plaintiff has suffered no legally cognizable injury.

WHEREFORE, Defendant requests that the Court: (A) enter Judgment in its favor and against Plaintiff; (B) deny class certification; (C) award Defendant its reasonable attorneys' fees and costs; and (D) grant Defendant such other and further relief as is appropriate.

GROUPON, INC.

By:_____
One of Its Attorneys

Eric N. Macey *(emacey@novackmacey.com)*
Christopher S. Moore *(cmoore@novackmacey.com)*
Brian E. Cohen (bcohen@novackmacey.com)
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL   60606
(312) 419-6900
Firm ID 91731

## CERTIFICATE OF SERVICE

Brian E. Cohen, an attorney, hereby certifies that he served the foregoing *Answer And Affirmative Defenses To Complaint And Demand For Jury Trial*, by causing a true and correct copy thereof to be delivered by U.S. Mail, postage prepaid, and e-mail, to:

> Jay Edelson *(jedelson@edelson.com)*
> Ari J. Scharg *(ascharg@edelson.com)*
> EDELSON, PC
> 350 North LaSalle Street, 13th Floor
> Chicago, IL 60654

on this 18th day of November, 2016.

_____
Brian E. Cohen

# Exhibit F

Order                                              (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dancel

           v.

Groupon, Inc.

No. 16 CH01716

**ORDER**

The Parties having appeared for presentment on Plaintiff's Motion to Deny Defendant's Demand for Bill of Particulars, with notice having been provided, it is hereby ordered that:

① Per the agreement reached by the parties, Plaintiff shall provide Defendant with the items identified by Defendant's Demand for Bill of Particulars by close of business on May 6, 2016, and Defendant shall answer or otherwise respond to the complaint by June 3, 2016.

② This case is set for status on June 9, 2016 at 10:30am

③ Plaintiff's Motion to Deny is entered and Continued to June 9, 2016.

Attorney No.: 44146

Name: Edelson PC

Atty. for: Plaintiff

Address: 350 N. LaSalle, Suite 1300

City/State/Zip: Chicago, Illinois 60654

Telephone: 312-239-362

**ENTERED:**

Dated: _____, _____

**ENTERED**
JUDGE THOMAS R. ALLEN · 2043
MAY 06 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge           Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and    )
on behalf of all others similarly situated,    )
    )
        Plaintiff,    )
    )
    v.    )    No. 16 CH 01716
    )
GROUPON, INC., a Delaware Corporation,    )    Judge Thomas R. Allen
    )
        Defendant.    )

### ORDER

This matter coming to be heard on Defendant Groupon, Inc.'s Motion to Stay Discovery (the "Motion"), the Court being duly advised in the premises;

IT IS HEREBY ORDERED:

1.     Plaintiff shall file her response to the Motion on or before June 16, 2016; Defendant shall file its reply in support of the Motion on or before June 30, 2016.

2.     The Clerk's status on the Motion shall be held on *Monday, July 11, 2016 at 10:00a.m.*

3.     The deadline for Defendant to respond to any discovery served by Plaintiff including Plaintiff's: (a) First Set of Interrogatories; (b) First Set of Requests for Production; and (c) Amended First Set of Requests to Admit Facts, shall be stayed pending resolution of the Motion and until further order of this Court; and

4.     The status currently set for June 9, 2016 at 9:30 a.m. is stricken.

Prepared by:               ENTER:
Novack and Macey LLP (CSM)
100 North Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731                  Judge                Date

ENTERED
JUDGE THOMAS R. ALLEN - 2043
MAY 26 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

_Daniel_ )
))
_____ )
**Plaintiff(s),** )
)
**v.** )
)
_Groupon Inc._ )
_____ )
**Defendant(s).** )

**No.** 16 CH1716

**Calendar 10**

**Judge Thomas R. Allen**

## BRIEFING SCHEDULE ORDER

This cause coming on entry of a briefing schedule on the motion of movant
_Defendant Groupon_ brought pursuant to ___ 735 ILCS 5/2-615, ___ 735 JLCS 5/2-619,
_X_ 735 ILCS 5/2-619.1, ___ 735 ILCS 5/2-1005, ___ Other: _____ ,

**IT IS HEREBY ORDERED:**

1. Movant's brief in support of the motion is due on or before _N/A_ .

2. The Response of _Plaintiff_ is due on or before _July 8, 2016_ .

3. Movant's Reply is due on or before _July 29, 2016_ .

4. This matter is set for Clerk's Status (the first **Monday** following Reply) for the scheduling of a hearing date on **Monday,** _August 1, 2016_ at **10:00 AM**.

5. There is a **15-page** limit on Supporting and Responsive briefs. There is a **10-page** limit on Reply briefs. All briefs shall be double spaced, using 12-point font and 1-inch margins. Leave of court is required to file a brief in excess of the stated limits.

6. At a Clerk's Status, the **movant** is required to supply the Court with a complete set of courtesy copies, including all briefs and any relevant pleadings or the complaint.

Attorney No.: _91731_

Name: _Novack and Macy (BEC)_

Attorney for: _Defendant_

Address: _100 N Riverside Plaza_
_Chicago 60606_

Phone No.: _312-419-6900_

ENTERED
JUDGE THOMAS R. ALLEN•2043
JUN 10 2016
DOROTHY BROWN
CLERK OF

_____
**Judge Thomas R. Allen**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

_Daniel_ )
_____ )
**Plaintiff(s),** )
)
**v.** )
)
_Cooper_ )
_____ )
**Defendant(s).** )

No. ___16 CH 11L___

Calendar 10

Judge Thomas R. Allen

<u>**CLERK STATUS ORDER**</u>

This cause coming to be heard on the Clerk Status Call, **IT IS HEREBY ORDERED:**

1.  Case is set for Hearing on ___Defendant___ 's Motion ~~to Stay Discovery~~

    _____ on ~~August 17, 2016~~ at ~~11:00 am~~

2.  A **Court Reporter** is ~~REQUIRED~~ NOT and will be provided by ___N/A___ .

Attorney No.: ___91731___

Name: ___Brian Cobo___

Firm: ___Novack and Macey___

Attorney for: ___Defendant___

Address: ___100 N. Riverside Plaza___

_____

Phone No.: ___312-481-6900___

ENTERED
JUDGE THOMAS R. ALLEN - 2043
ENTERED JUL 1 1 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK _____

_____

Judge Thomas R. Allen

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| _Daniel_ | ) | No. _16 CH 01718_ |
| **Plaintiff(s),** | ) | |
| | ) | Calendar 10 |
| v. | ) | |
| | ) | Judge Thomas R. Allen |
| _Groupon, Inc_ | ) | |
| **Defendant(s).** | ) | |

### CLERK STATUS ORDER

This cause coming to be heard on the Clerk Status Call, **IT IS HEREBY ORDERED:**

1. Case is set for Hearing on _Defendant's_ 's Motion _to Dismiss_
   _____ on _August 24, 2016_ at _2 pm_.

2. A **Court Reporter** is REQUIRED and will be provided by _Defendant_

3) Defendant is granted leave to file a 14-page reply brief instanter.

4) The current hearing on Defendant's Motion to Stay Discovery of August 17, 2016 is stricken, and the hearing on Defendant's Motion to Stay is reset to August 24, 2016 at 2 p.m.

Attorney No.: _91731_

Name: _Christopher Moser_

Firm: _Dowick and Massey LLP_

Attorney for: _Defendant_

Address: _100 N. Riverside Plaza_

_Chicago IL 60606_

Phone No.: _312-419-6900_

ENTERED:

**ENTERED**
Judge Neil H. Cohen-2021
AUG - 1 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge Thomas R. Allen

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

                    *Plaintiff,*

v.

GROUPON, INC., a Delaware Corporation,

                    *Defendant.*

Case No. 16 CH 01716

[Judge Thomas R. Allen]

## AGREED ORDER

This matter coming before the Court on the parties' agreement to strike the motion

hearing on Defendant's Motion to Stay Discovery and Motion to Dismiss presently set for

August 24, 2016 and reset the hearing for August 31, 2016 at 2:00 PM, it is hereby ordered that:

The August 24, 2016 motion hearing is stricken and reset before Judge Thomas R.
Allen for August 31, 2016 at 2:00 PM without further notice.

So ordered:

**ENTERED**
Judge Neil H. Cohen-2021

By: _____

AUG – 4 2016

Judge Thomas R. Allen

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Prepared by:
Benjamin S. Thomassen
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.572.7208
Fax: 312.589.6378

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DANCEL

v.

GROUPON

No. 16 CH 1716

### AGREED ORDER

THIS MATTER coming before the Court to reset the hearing date on Defendant's Motion to Stay Discovery and Motion to Dismiss, it is hereby ordered that:

The August 31, 2016 motion hearing is stricken and reset before Judge Thomas Allen for October 6, 2016 at 2:00 p.m. without further notice.

Atty. No.: _____

Name: _____

Atty. for: _____

Address: _____

City/State/Zip: _____

Telephone: _____

ENTERED

AUG 23 2016

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

ENTERED: _____

Dated: _____

Judge _____ 2043 _____ Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY

ORDER                                                    (Rev. 9/13/04) CCG 0002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and          )
on behalf of all others similarly situated, )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )        No. 16 CH 01716
                                            )
GROUPON, INC., a Delaware Corporation,      )        Judge Thomas R. Allen
                                            )
                    Defendant.              )

## O R D E R

This cause coming on to be heard on Defendant's (a) Section 2-619.1 Motion to Dismiss Plaintiff's Complaint, and (b) Motion to Stay Discovery; due notice having been given; counsel for the parties being present; the Court having reviewed the briefs of the parties, listened to the arguments of counsel; and being otherwise fully advised in the premises,

IT IS HEREBY ORDERED THAT:

1. Defendant's Section 2-619 Motion to Dismiss the Complaint is DENIED

2. Defendant's Section 2-615 Motion to ~~Dismiss~~ Plaintiff's claim for punitive damages is GRANTED and the Complaint's claim for punitive damages is stricken without prejudice

3. Defendant's Motion to Stay Discovery is MOOT, and the time for Defendant to respond to the discovery previously served by Plaintiff runs from the date hereof.

4. This matter is set for status on January 17, 2017 at 9:30 am in Room 2302 without further notice.

**Name** Novack and Macey LLP (ENM)
**Attorney for** Defendant
**Address** 100 North Riverside Plaza
**City** Chicago, Illinois 60606-1501
**Telephone** (312) 419-6900
**Firm No.** 91731

ENTERED:

> **E N T E R E D**
> JUDGE THOMAS R. ALLEN-2043
>
> OCT 0 6 2016
>
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                                                           (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Christine Dancel

v.

Groupon, Inc.

No. 16 CH 01716

**ORDER**

This cause coming to be heard on status, due notice given, & the Court advised in the premises,

IT IS HEREBY ORDERED:

This matter is set for further status before Judge Thomas Allen on April 17, 2017 at 10:30 a.m. without further notice.

Attorney No.: 6307169
Name: Ben Thomassen
Atty. for: Plaintiff
Address: Edelson PC / 350 N. Lasalle #1500
City/State/Zip: Chicago, IL 60654
Telephone: 312 572 7208

**ENTERED:**

ENTERED
JUDGE THOMAS ALLEN · 2043
JAN 17 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Dated: _____

_____
Judge                          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                            (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dancel

v.     Plaintiff

Groupon, Inc

Defendant

No. 16 CH 01716

**ORDER**

This cause coming on to be heard for status, the Court being advised in the premises, IT IS HEREBY ORDERED:

This matter is set for status before Judge Thomas Allen on JUNE 20, 2017 at 10:30 a.m., without further notice; and

The Court hereby enters the parties' Stipulated Protective Order.

Attorney No.: 91731

Name: Novack and Macey LLP (CSM)

Atty. for: Defendant

Address: 100 N. Riverside Plaza

City/State/Zip: Chicago IL 60606

Telephone: 312 - 419-6900

**ENTERED:**

Dated: _____

**ENTERED**
JUDGE THOMAS ALLEN-2043
APR 17 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

_____       _____
Judge                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

                Plaintiff,

    v.

GROUPON, INC., a Delaware Corporation,

                Defendant.

Case No. 16 CH 01716

Judge Thomas R. Allen

## STIPULATED PROTECTIVE ORDER

Plaintiff Christine Dancel, by and through her attorneys, and Defendant Groupon, Inc.,

(hereafter collectively referred to as the "Parties"), by and through their attorneys, stipulate

and move the Court for a Protective Order concerning the treatment of Confidential

Information and Highly Confidential Information (as hereinafter defined), and, as grounds

therefor, state as follows:

    1.      In the above-styled action (the "Litigation"), at least one of the Parties has

sought and/or is seeking Confidential Information and/or Highly Confidential Information (as

defined in paragraphs 2 and 13 below). The Parties also anticipate seeking additional

Confidential Information and/or Highly Confidential Information during discovery and that

there will be questioning concerning Confidential Information and/or Highly Confidential

Information in the course of depositions. The Parties assert that the disclosure of such

information outside the scope of this Litigation could result in significant injury to one or more

of the Parties' business or privacy interests. The Parties have entered into this Stipulation and

request the Court enter this Protective Order for the purpose of preventing the disclosure and

use of Confidential Information and/or Highly Confidential Information except as set forth

herein.

2.　　　"Confidential Information" means any document, file, portions of files, transcribed testimony, or response to a discovery request, including any extract, abstract, chart, summary, note, or copy made therefrom - not made available to the public - and designated by one of the Parties in the manner provided in paragraph 3 below as containing sensitive information, including a person's personal medical, financial, credit, or otherwise sensitive information and business operations, processes, and technical and developmental information, or other information, the disclosure of which is likely to harm that person's reputation or competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third person or to a court.

3.　　　Where Confidential Information is produced, provided, or otherwise disclosed by a Party in response to any discovery request, it will be designated in the following manner:

a.　　　By imprinting the word "Confidential" on the bottom of the page of the document produced;

b.　　　By redacting the Confidential Information and marking on or near the redaction that the information is "Confidential"; or

c.　　　With respect to transcribed testimony, by giving written notice to opposing counsel designating such portions as "Confidential" no later than twenty-one (21) calendar days after receipt of the transcribed testimony.

4.　　　All Confidential Information provided by a Party in response to a discovery request or transcribed testimony shall be subject to the following restrictions:

a.　　　It shall be used only for the purpose of this litigation and not for any business or other purpose whatsoever;

b.     The Parties may disclose Confidential Information, in whole or in part, only to those listed below and upon the execution of an affidavit in the form of Exhibit A, unless otherwise agreed by the Parties:

- the Court and Court personnel as allowed or directed by the Court, as well as any mediator or settlement judge that may be retained by the Parties;

- copy, data, hosting, and other providers of litigation services retained by counsel for the Parties for the purposes of the action;

- the Parties including their officers, directors, shareholders, managers, members, partners, accountants, attorneys, and authorized representatives, and their employees who have a need to know about the information;

- in-house and outside attorneys for the Parties, and those attorneys' respective employees;

- court reporters and videographers transcribing or filming depositions or testimony involving Confidential Information;

- experts or consultants of a Party; and

- a non-party witness who may be examined and may testify concerning Confidential Information if it appears on its face or from other documents that the witness is the author or recipient of the Confidential Information or if there is a good faith, legitimate basis for examining the non-party witness concerning the Confidential Information.

5.     Individuals authorized to review Confidential Information pursuant to this Protective Order shall hold Confidential Information in confidence and shall not divulge the Confidential Information, either verbally or in writing, to any other person, entity or government agency unless authorized to do so by court order.

6.     The Party's counsel who discloses Confidential Information shall be responsible for assuring compliance with the terms of this Protective Order with respect to persons to whom such Confidential Information is disclosed and shall obtain and retain the affidavits signed by qualified recipients of Confidential Information, and shall maintain a list

3

of all persons to whom any Confidential Information is disclosed.

7.      During the pendency of this Litigation, opposing counsel may, upon court order or agreement of the Parties inspect the list maintained by counsel pursuant to paragraph 6 above upon a showing of substantial need in order to establish the source of an unauthorized disclosure of Confidential Information and that opposing counsel are unable otherwise to identify the source of the disclosure. If counsel disagrees with opposing counsel's showing of substantial need, then counsel may seek a court order requiring inspection under terms and conditions deemed appropriate by the Court. Nothing contained in this paragraph 7, however, shall have any bearing on the Parties' ability to obtain discovery related to any Parties' consulting or testifying experts.

8.      No copies of Confidential Information shall be made except by or on behalf of counsel in this Litigation and such copies shall be made and used solely for purposes of this Litigation.

9.      A Party's failure to designate a document, thing, or testimony as Confidential Information does not constitute forfeiture of a claim of confidentiality as to any other document, thing, or testimony.

10.     If opposing counsel objects to the designation of certain information as Confidential Information, he or she shall promptly inform the other Parties' counsel in writing of the specific grounds of objection to the designation. All counsel shall then, in good faith and on an informal basis, attempt to resolve such dispute. If after such good faith attempt, all counsel are unable to resolve their dispute, opposing counsel may move for a disclosure order consistent with this order. Opposing counsel shall file any motion seeking the disclosure of Confidential Information within fourteen (14) days of delivery of notice of opposing counsel's

4

objection, and the information shall continue to be treated as Confidential Information from the time it is produced until a ruling by the Court on the motion.

11.     Use of Confidential Information in court proceedings: In the event Confidential Information is used in any court filing or proceeding in this Litigation, including but not limited to its use at trial, it shall not lose its status as Confidential Information as between the Parties through such use. Confidential Information and pleadings or briefs quoting or discussing Confidential Information will not be accepted for filing "under seal" or otherwise kept out of the public record in this Litigation, however, except by court order issued upon motion of the Party seeking to file the documents under seal. Any motion requesting leave to file documents under seal shall comply with applicable local rules and demonstrate that the Confidential Information at issue is entitled to protection.

12.     An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document. If a Party designates a document as Confidential Information after it was initially produced, the receiving Party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Protective Order. No Party shall be found to have violated this Protective Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

13.     A Producing Party may also designate Documents produced or Testimony given as "Highly Confidential Information."  This designation shall signify that (1) at the time of the designation, the Documents or Testimony contain or constitute trade secrets or

confidential business or financial information; (2) there is a substantial or imminent risk that, absent such a designation, their receipt by the Receiving Party could cause competitive and/or economic harm to the Producing Party; and (3) such Documents or Testimony would not otherwise be adequately protected under the procedures set forth herein for "Confidential Information." The provisions of this Stipulation, including all usage, dissemination, and disclosure limitations, shall be applicable to "Highly Confidential Information" in the same manner as "Confidential Information," except notwithstanding any other provision of this Stipulation, no disclosure of Highly Confidential Information may be made to any party. For purposes of this subsection of this Stipulation, a party's in-house counsel and the paralegal and support personnel working for such in-house counsel do not constitute a "party." This subsection shall not limit use of Highly Confidential Information or deposition exhibits in accordance with the above paragraphs, and parties may submit Highly Confidential Information to the Court in accordance with the above. Nothing in this subsection shall preclude counsel from giving advice to his or her client that includes a general evaluation of Highly Confidential Information, provided that counsel shall not disclose the contents of any Highly Confidential Information contrary to the terms of this Stipulation.

14.     The termination of this Litigation shall not relieve the Parties or other persons obligated hereunder from their responsibility to maintain the confidentiality of Confidential Information pursuant to this Protective Order, and the Court shall retain continuing jurisdiction to enforce the terms of this Protective Order.

15.     Within sixty (60) days of the final disposition of this Litigation, each receiving Party must either return to the disclosing Party or destroy copies of documents containing Confidential Information. Notwithstanding the requirements of this paragraph, a Party and its

6

counsel may retain one complete set of all documents filed with the Court and attorney work product. Final disposition shall be deemed to be the later of (i) dismissal of all claims and defenses in this Litigation with prejudice and (ii) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

16.     If a receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this Litigation as Confidential Information, the receiving Party must promptly notify the disclosing Party, in writing, and provide a copy of the subpoena or court order. The receiving Party must also promptly inform in writing the Party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this order, and provide a copy of this Protective Order. The purpose of imposing these duties is to alert the interested persons to the existence of this Protective Order and to afford the disclosing Party in this Litigation an opportunity to protect its Confidential Information in the court from which the subpoena or order issued. The disclosing Party shall bear the burden and expense of seeking protection in that court of its Confidential Information.

17.     By agreeing to the entry of this Protective Order, the Parties adopt no position as to the authenticity or admissibility of documents produced subject to it.

18.     This Protective Order shall not terminate at the conclusion of the Litigation and shall continue forward unless modified by the Court.

19.     Nothing in this Order shall prevent a designating Party from using its own information that it has designated as Confidential Information in any manner it desires.

20.     Nothing in this Protective Order shall preclude any Party from filing a motion

seeking further or different protection from the Court, or from filing a motion with respect to

the manner in which Confidential Information shall be treated at trial. The Parties request the

Court approve and Order this Stipulation and Protective Order.


DATED  this _____day of _____, 20_____.

BY THE COURT:

*ENTERED*
*JUDGE THOMAS ALLEN-2043*
*APR 17 2017*
*DOROTHY BROWN*
*CLERK OF THE CIRCUIT COURT*
*DEPUTY OF COOK COUNTY, IL*

_____
JUDGE THOMAS R. ALLEN


STIPULATED AND AGREED TO:

APPROVED:

/s/ _____
Attorney for Plaintiff Christine Dancel

Jay Edelson
jedelson@edelson.com
Benjamin Thomassen
bthomassen@edelson.com
EDELSON PC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, California 94107
Tel: 415.212.9300

Fax: 415.373.9435

Attorney for Defendant Groupon, Inc.

Eric N. Macey
emacey@novackmacey.com
Christopher S. Moore
cmoore@novakmacey.com
Brian E. Cohen
bcohen@novakmacey.com
Novak and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

[EXHIBIT A]
IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

               Plaintiff,

    v.                               Case No. 16 CH 01716

GROUPON, INC., a Delaware Corporation,

               Defendant.              Judge Thomas R. Allen

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

The undersigned hereby acknowledges that he/she has read the Protective Order dated _____ in the above captioned matter and agrees to be bound by its terms. The undersigned agrees to submit to the jurisdiction of the Cook County Circuit Court in all matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use the designated Confidential Information only to the extent and in the manner allowed by the Protective Order and not to disclose the Confidential Information to any other individual or entity.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verify believes the same to be true.

Date:_____      Signed:    _____

                                 By:        _____

Order                        (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Dancel

         v.   Plaintiff           No.   16 CH 0176

Groupon, Inc.

                Defendant

### ORDER

This matter coming on to be heard on Defendant's Motion to Set Class-Certification Scheduling Order (the "Motion"), the Court being advised in the premises, IT IS HEREBY ORDERED:

1) The parties shall complete fact discovery related to class certification by August 30, 2017;

2) Expert witnesses for Class Certification, if any, shall be disclosed, along with such witnesses' expert report as follows: (a) Plaintiff's expert by September 15 2017; (b) Defendant's expert by October 16, 2017.

3) ~~Defendant~~ Plaintiff shall file an Amended Motion and Memorandum in support of ~~their~~ Class Certification ("Class Motion") on or before November 1, 2017;

4) Defendant shall respond to the Class Motion on or before November 22, 2017

5) Plaintiff shall file the Reply in support of the Class Motion on or before December 6, 2017;

6) The Class certification motion will be set by separate notice; and

7) The status of June 20, 2017 is stricken, and this matter is set for status on August 22, 2017 at 10:30 a.m.

Attorney No.: 91731

Name: Novack and Macey LLP (CSM)

Atty. for: Defendant

Address: 100 N. Riverside Plaza

City/State/Zip: Chicago IL 60606

Telephone: 312-419-6900

ENTERED:

Dated: _____

ENTERED
JUDGE THOMAS ALLEN-2043
JUN 19 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| CHRISTINE DANCEL, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )     No. 16 CH 01716 ) |
| GROUPON, INC., a Delaware Corporation, | )     Judge Thomas R. Allen ) |
| Defendant. | ) |

### ORDER

This matter coming on to be heard for status, the Court being duly advised in the premises;

IT IS HEREBY ORDERED:

1.      The August 30, 2017 deadline to complete fact discovery related to class certification is extended until ___Sept. 29___, 2017, to accommodate: (a) the completion of written discovery that already has been served on the parties; (b) third-party discovery with respect to Instagram; and (c) scheduling and completing depositions of the parties for which notices of deposition already have been served, and scheduling and completing the deposition(s) of Instagram, if any.

2.      With respect to class discovery, absent agreement, the parties must obtain leave of Court: (a) in order to notice additional depositions of any party; (b) before serving additional written discovery on any party; or (c) before serving any subpoena or deposing any third-party other than Instagram.

3.      The deadlines for expert disclosures set in the Court's June 19, 2017 Order are stricken.  Expert witnesses for Class Certification, if any, shall be disclosed, along with such witnesses' written report as follows:

a.  Plaintiff's expert: _October 16_____, 2017.

b.  Defendant's expert: _Nov. 16_____, 2017.

4.  Plaintiff shall file an amended motion and memorandum in support of class certification (the "Class Motion") on or before _December 1, 2017_.

5.  Defendant shall respond to the Class Motion on or before _December 22, 2017_;

6.  Plaintiff shall file her Reply in Support of the Class Motion on or before _January 12, 2018_;

7.  This matter is set for status on _Sept. 18, 2017_____, at _10:30_ a.m; and a Clerks status on January 15, 2018 at 9:30 a.m.

**PREPARED BY:**

NOVACK AND MACEY LLP (CSM)
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Firm No. 91731

ENTER:

_____
Judge

ENTERED
JUDGE _Cohen_
#2004
AUG 22 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and )
on behalf of all others similarly situated, )
                                      )
           Plaintiff, )
                                        )
    v. )               No.  16 CH 01716
                                        )
GROUPON, INC., a Delaware Corporation, )     Judge Thomas R. Allen
                                        )
          Defendant. )

## <u>AGREED ORDER</u>

This matter coming to be heard on Groupon, Inc.'s Motion (the "Motion") to Replace Exhibit A to its Motion to Compel Discovery and For Sanctions ("Motion to Compel") with a Redacted Version of the Exhibit or, in the alternative, to place the Motion to Compel under seal; due notice having been given; and the Court being fully advised on the premises:

IT IS HEREBY ORDERED:

1. The Motion is granted; and

2. The Clerk of the Circuit Court of Cook County is directed to replace Exhibit A to the Motion to Compel (filed September 11, 2017) with a redacted version of Exhibit and impound or destroy the original, or place the Motion to Compel under seal.


Dated: September 12, 2017         ENTERED:


Prepared by:
Eric N. Macey
Christopher S. Moore
Brian E. Cohen
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL  60606
(312) 419-6900
Firm ID 91731

                       _____
                          Judge Thomas R. Allen



ENTERED
JUDGE
SEP 1 2 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Order                                                                    (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Doncel

v.                                    No. 16 CH 1716

Groupon, Inc.

### ORDER

This matter coming to be heard for status and Defendant's
Motion to Compel and For Sanctions (the "Motion"); all parties having
notice; the Court being fully advised on the premises: IT IS HEREBY ORDERED

1) Plaintiff will file a response and submit certain documents
   for in camera inspection by October 2, 2017

2) The Motion is scheduled for hearing on October 12, 2017 at 11 am
   without further notice.

Atty. No.: 91731

Name: Nowak and Macey (BSC)          ENTERED:

Atty. for: Defendant

Address: 100 N Riverside            Dated: _____, _____

City/State/Zip: Chicago IL 60606

Telephone: 312-419-6900             _____
                                    Judge              Judge's No.

```
E N T E R E D
JUDGE THOMAS ALLEN-2043
SEP 18 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CHRISTINE DANCEL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  16 CH 01716 |
| GROUPON, INC., a Delaware Corporation, | ) ) | Judge Thomas R. Allen |
| Defendant. | ) ) | |

## AGREED ORDER

This matter coming on to be heard for status, the Court being duly advised in the premises;

IT IS HEREBY ORDERED:

1.    The September 29, 2017 deadline to complete fact discovery related to class certification is extended until October 31, 2017, to accommodate: (a) the completion of written discovery that already has been served on the parties; (b) third-party discovery with respect to Instagram; and (c) scheduling and completing depositions of the parties for which notices of deposition already have been served, and scheduling and completing the deposition(s) of Instagram, if any.

2.    With respect to class discovery, absent agreement, the parties must obtain leave of Court: (a) in order to notice additional depositions of any party; (b) before serving additional written discovery on any party; or (c) before serving any subpoena or deposing any third-party other than Instagram.

3.    The deadlines for expert disclosures set in the Court's August 22, 2017 Order are stricken.  Expert witnesses for Class Certification, if any, shall be disclosed, along with such witnesses' written report as follows:

       a.      Plaintiff's expert: November 15, 2017.

       b.      Defendant's expert: December 15, 2017.

4.      Plaintiff shall file an amended motion and memorandum in support of class certification (the "Class Motion") on or before January 8, 2018.

5.      Defendant shall respond to the Class Motion on or before January 29, 2018;

6.      Plaintiff shall file her Reply in Support of the Class Motion on or before February 20, 2018;

7.      This matter is set for a clerk's status on February 26, 2018, at 9:30 a.m.

**PREPARED BY:**

NOVACK AND MACEY LLP (CSM)
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Firm No. 91731

ENTER:

_____
Judge                        Date



ENTERED
JUDGE THOMAS ALLEN - 2043
SEP 18 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and )
on behalf of all others similarly situated, )
                                  )
          Plaintiff, )
                                  )
     v.                            )     No. 16 CH 01716
                                  )
GROUPON, INC., a Delaware Corporation, )     Judge Thomas R. Allen
                                  )
          Defendant. )

### <u>AGREED ORDER</u>

This matter coming to be heard on Christine Dancel's ("Plaintiff") Motion to File Her Motion For Disclosure of Information Designated By Defendant as "Highly Confidential" and Discovery Sanctions ("Motion for Disclosure Order") Under Seal (the "Motion to Seal"); due notice having been given; and the Court being fully advised on the premises:

IT IS HEREBY ORDERED:

1. The Motion to Seal is granted; and

2. The Clerk of the Circuit Court of Cook County is directed to accept Plaintiff's Motion for Disclosure Order for filing under seal until further order of Court.

Dated: September 21, 2017        ENTERED:

<u>Prepared by</u>:
Ben Thomassen
Edelson PC                     ————————————————————
350 North LaSalle Street           Judge Thomas R. Allen
Suite 1300
Chicago, Illinois 60654
Tel: 312-589-6370
Fax: 312-589-6378
Firm ID: 44146



ENTERED
JUDGE THOMAS ALLEN-2043
SEP 21 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

                *Plaintiff*,

    v.

GROUPON, INC., a Delaware Corporation,

                *Defendant*.

Case No. 16 CH 01716

Judge Thomas R. Allen

### ORDER

This matter coming to be heard on Plaintiff Christine Dancel's Motion for Disclosure of
Information Designated by Defendant as "Highly Confidential" and Discovery Sanctions (the
"Motion"); the Court having heard oral argument by the Parties; and the Court being fully
advised on the premises,

IT IS HEREBY ORDERED:

1. The Motion is granted in part and denied in part;

2. Plaintiff's request that the Court strike Defendant Groupon, Inc.'s ("Groupon")
   confidentiality designations on the documents labeled G_003302 and G_003303 (the
   "Documents") is denied;

3. Over Groupon's objections set forth on the record and in Groupon's Response to the
   Motion, Plaintiff may only disclose the Instagram usernames reflected in the Documents
   to non-party Instagram, LLC; and

4. Plaintiff's request for sanctions is denied.

Dated: September 29, 2017        ENTERED:

Prepared by:
Ben Thomassen
EDELSON PC                      Judge Thomas R. Allen
350 North Lasalle Street
Suite 1300
Chicago, Illinois 60640
312.589.6370
Firm ID: 44146

ENTERED
JUDGE THOMAS ALLEN-2043
OCT 02 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

ORDER                                                          (Rev. 9/13/04) CCG 0002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and          )
on behalf of all others similarly situated,  )
                                             )
            Plaintiff,                       )
                                             )
    v.                                       )     No.  16 CH 01716
                                             )
GROUPON, INC., a Delaware Corporation,       )     Judge Thomas R. Allen
                                             )
            Defendant.                       )

### O R D E R

This cause coming on to be heard on Defendant Groupon, Inc.'s Motion to Compel Discovery and For Sanctions; due notice having been given; counsel for the parties being present; and the Court having reviewed the parties' written submissions, listened to the arguments of counsel, and being otherwise duly advised in the premises,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is granted in part and denied in part.

2. The January 13, 2016 Facebook message is not privileged and shall be produced instanter.

3. The January 13, 2016 email from Mr. Dore and is privileged.

4. Defendant's Motion for Sanctions is denied.

**Name** Novack and Macey LLP (ENM)
**Attorney for** Defendant
**Address** 100 North Riverside Plaza
**City** Chicago, Illinois  60606-1501
**Telephone** (312) 419-6900
**Firm No.** 91731

ENTERED
JUDGE THOMAS ALLEN-2043

ENTERED:  OCT 12 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CHRISTINE DANCEL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 16 CH 01716 |
| GROUPON, INC., a Delaware Corporation, | ) ) | Judge Thomas R. Allen |
| Defendant. | ) | |

## ORDER

This matter coming on to be heard for Plaintiff's Motion for Leave to Extend Deadlines

Relating to Class Certification (the "Motion"); all parties having notice; and the Court being duly

advised in the premises; IT IS HEREBY ORDERED:

1.    The Motion is denied / granted in part.

2.    The deadlines set forth in the Court's September 18, 2017 Order are stricken.

3.    The October 31, 2017 deadline to complete fact discovery related to class

certification is extended until ___Dec. 29___, 2017

_Plaintiff shall not serve any additional fact discovery during this period._
_This shall be the final extension of the fact discovery cutoff._

4.    Plaintiff's expert witnesses for Class Certification, if any, shall be disclosed,

along with such witnesses' written report as follows:

a.    Plaintiff's expert: ___Jan 15, 2018___.

b.    Defendant's expert: ___Feb 13, 2018___.

5.    Plaintiff shall file an amended motion and memorandum in support of class

certification (the "Class Motion") on or before ___March 9, 2018___.

1

6.    Defendant shall respond to the Class Motion on or before
April 6, 2018;

7.    Plaintiff shall file her Reply in Support of the Class Motion on or before
April 27, 2018;

8.    This matter is set for status on  April 30, 2018 , at 9:30 am.
a.m.

**PREPARED BY:**

NOVACK AND MACEY LLP (BEC)
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Firm No. 91731

*Counsel for Defendant*

ENTER:

ENTERED
JUDGE THOMAS ALLEN - 2043
NOV 15 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

_____
Judge                 Date

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

                          *Plaintiff,*

     v.

GROUPON, INC., a Delaware Corporation,

                       *Defendant.*

Case No. 16 CH 01716

Judge Thomas R. Allen

**AGREED ORDER**

This matter coming to be heard on Plaintiff's Motion to Compel Inspection of Documents and Extend Deadlines (the "Motion"), all parties having notice, and the Court being duly advised in the premises, IT IS HEREBY ORDERED:

1. The Motion is granted in part.

2. Groupon shall make its source code, as discussed and described in the Motion, available for Plaintiff's inspection on January 26, 2018.

3. The deadlines set forth in the Court's November 15, 2017 Order are stricken.

4. Plaintiff's expert witnesses for Class Certification, if any, shall be disclosed along with such witnesses' written report on February 5, 2018. Groupon shall depose any such witnesses by March 20, 2018.

5. Defendants' expert witnesses for Class Certification, if any, shall be disclosed along with such witnesses' written report on March 23, 2018. Plaintiff shall depose any such witnesses by April 20, 2018.

6. Plaintiff shall file an amended motion and memorandum in support of class certification (the "Class Motion") by March 9, 2018.

1

7.     Defendant shall respond to the Class Motion on or before April 6, 2018.

8.     Plaintiff shall file her Reply in Support of the Class Motion on or before May 4,

2018.

9.     This matter is set for status on May 7, 2018 at 9:30 a.m.

Prepared by:                    ENTERED:



ENTERED
JUDGE THOMAS ALLEN-2043
JAN 24 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

EDELSON PC
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60640
312.589.6370
Firm ID: 62075

2

Order                                            (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Daniel

           v.   Plaintiff          No.    16 CH 1716

Groupon, Inc.

           Defendant

**ORDER**

This matter coming on to be heard on Plaintiff's Motion to File Amended Motion and Memorandum of Law in Support of Motion Under Seal (the "Motion") which Motion is Unopposed, IT IS HEREBY ORDERED THAT:

(1) The Motion is granted.

**ENTERED**
JUDGE THOMAS ALLEN - 2043
MAR 16 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No.: 91731

Name: Novack and Macey LLP (CSM)

Atty. for: Defendant

Address: 100 N. Riverside Plaza

City/State/Zip: 60606

Telephone: 312-419-6900

ENTERED:

Dated: _____ , _____

_____
Judge            Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**