# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

CHRISTINE DANCEL                                    September 08, 2017

```
 1    STATE OF ILLINOIS    )
                           )  SS.
 2    COUNTY OF COOK       )

 3    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
           COUNTY DEPARTMENT, CHANCERY DIVISION
 4
      CHRISTINE DANCEL,           )
 5    individually and on         )
      behalf of all others        )
 6    similarly situated,         )
                                  )  No.  16 CH 01716
 7         Plaintiff,             )
                                  )
 8           vs.                  )
                                  )
 9    GROUPON, INC., a            )
      Delaware Corporation,       )
10                                )
           Defendant.             )
11

12    The deposition of CHRISTINE DANCEL, taken

13    before Angela C. Loisi, Certified Shorthand

14    Reporter, Registered Professional Reporter,

15    Federal Certified Realtime Reporter, taken

16    pursuant to the provisions of the Illinois

17    Code of Civil Procedure and the Rules of the

18    Supreme Court thereof pertaining to the

19    taking of depositions for the purpose of

20    discovery at 100 North Riverside Plaza,

21    Suite 1500, Chicago, Illinois, commencing at

22    9:30 a.m. on September 8, 2017.

23

24    Reporter:  Angela C. Loisi, CSR, RPR, FCRR
                 License No.:  084-004571
```

CHRISTINE DANCEL                                        September 08, 2017

Page 2

```
 1   APPEARANCES:
 2      EDELSON, PC
 3         BY:  MR. BENJAMIN THOMASSEN
 4      350 North LaSalle Street, Suite 1300
 5      Chicago, Illinois 60654
 6      (312) 589-6380
 7      Bthomassen@edelson.com
 8         Representing the Plaintiff;
 9
10      NOVACK & MACEY
11         BY:  MR. ERIC N. MACEY
12             MR. BRIAN E. COHEN
13      100 North Riverside Plaza, Suite 1500
14      Chicago, Illinois 60606-1501
15      (312) 419-6900
16      Emacey@novackmacey.com
17      Bcohen@novackmacey.com
18         Representing Groupon.
19
20   ALSO PRESENT:
21      MR. KEVIN McCORMICK,
22      Groupon Litigation Counsel
23
24
```

Page 3

```
 1              I N D E X
 2
 3   WITNESS:  CHRISTINE DANCEL          PAGE
 4   Examination by Mr. Macey            4
 5
 6
 7           E X H I B I T S
 8
 9   CHRISTINE DANCEL                    PAGE
10
11           (NO EXHIBITS MARKED)
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1              (Witness sworn.)
 2   WHEREUPON:
 3              CHRISTINE DANCEL,
 4   called as a witness herein, having been
 5   first duly sworn, was examined and testified
 6   as follows:
 7              EXAMINATION
 8   BY MR. MACEY:
 9      Q.  Could you tell the court reporter your
10   full name?
11      A.  Christine Mariah Dancel.
12      Q.  Okay.  Ms. Dancel, my name is
13   Eric Macey.
14      A.  Nice to you.
15      Q.  Okay.  And I represent Groupon.
16      A.  Okay.
17      Q.  This is my colleague, Brian Cohen, who
18   works with me on the case.
19              This is Kevin McCormick, and
20   Mr. McCormick is a senior litigation counsel
21   at Groupon --
22      A.  Okay.
23      Q.  -- and is here representing the
24   client.  Okay?
```

Page 5

```
 1      A.  Okay.
 2      Q.  All right.  You've never done this
 3   before, have you?
 4      A.  Correct.
 5      Q.  Okay.  I'm going to try to make it as
 6   easy as possible.  I ask questions, you
 7   answer.
 8              Your attorney may object from time to
 9   time, and unless he tells you not to answer
10   you should still answer the question anyway.
11   Okay?
12      A.  Okay.
13      Q.  All right.  One of the things I can
14   see we're going to have an issue with now is,
15   as humans we tend to answer questions through
16   physical gesture, like by nodding our head,
17   and not orally taking down the -- making the
18   answer.
19              But unfortunately, the court reporter,
20   who is really the boss of this whole process
21   here, cannot put down a nod.  She will
22   literally have to articulate your response.
23   Okay?
24      A.  Sounds good.
```

CHRISTINE DANCEL                                    September 08, 2017

Page 18

1      Q.   What document did you review?
2      A.   The document regarding the deposition.
3      Q.   I don't understand what that is.  Do
4  you have any more specificity?
5           Did you look at one document or
6  several?
7      A.   What was provided to me.
8      Q.   By counsel?
9      A.   Yeah.
10     Q.   Do you recall what they were?
11     A.   They were documents laying out who the
12  parties were, what my role was, and who I was
13  talking to.
14     Q.   Do -- did any of them have a name
15  to it, like a complaint or a motion?
16          Do you recall anything like that?
17     A.   One of them was named a "Complaint."
18     Q.   Okay.
19     A.   And the other ones were labeled
20  "deposition."
21     Q.   They were labeled "deposition"?
22     A.   Mm-hmm.
23     Q.   Okay.  We'll go over that.
24     A.   Okay.

Page 19

1      Q.   Had you met Mr. Thomassen before?
2      A.   Not before today.
3      Q.   Okay.  Had you met someone from
4  Mr. Thomassen's firm before today?
5      A.   No.
6      Q.   Never?
7      A.   No.
8      Q.   Had you spoken with someone in
9  Mr. Thomassen's firm before today?
10     A.   Yes.
11     Q.   Okay.  Why don't we go to the first
12  time you spoke with that person.
13          Who was that, do you know?
14     A.   It was a friend of my boyfriend.
15     Q.   Okay.  Is that -- is your boyfriend
16  still your boyfriend?
17     A.   Yes.
18     Q.   Okay.  What's his name, just so I
19  know?
20     A.   Jakub.
21     Q.   With a "K," a "C"?
22     A.   J-A- -- J-A-K-U-B.
23     Q.   And I believe his last name is not
24  easily pronounced.

Page 20

1      A.   Yeah.
2      Q.   Okay.  So why don't you spell it for
3  the court reporter.
4      A.   S-I-E-R-Z-P-U-T-O-W-S-K-I.
5      Q.   So to make life easier for all of us,
6  in particular the court reporter, I'm going to
7  call him "Jakub" or "your boyfriend."
8           Will you know who I'm talking about?
9      A.   Yes.
10     Q.   What was the name of your boyfriend's
11  friend at Mr. Thomassen's firm?
12     A.   Albert.
13     Q.   Albert what?
14     A.   He also has a complicated Polish last
15  name.
16     Q.   Right.  Do you know what it is?
17     A.   Not off the top of my head.
18     Q.   How -- but not spelling it, but do you
19  know what it is otherwise?
20     A.   No.
21     Q.   Okay.  So you recognize -- I'm sorry.
22  So Albert, you spoke with an Albert?
23     A.   I spoke with my boyfriend first.
24     Q.   Yes, we'll get into that.

Page 21

1           But after you spoke with your
2  boyfriend, as a result of that you spoke with
3  Albert; correct?
4      A.   Yeah.
5      Q.   Did you call Albert or did Albert call
6  you?
7      A.   Albert reached out to me.
8      Q.   He reached out to you, okay.
9           How did he know to call you?
10     A.   He reached out to my boyfriend first.
11     Q.   And then your boyfriend came to you?
12     A.   Yes.
13     Q.   Did your boyfriend ask you if it was
14  okay if you spoke with Albert?
15     A.   Yes.
16     Q.   And what did you say?
17     A.   I said, Sure.
18     Q.   Okay.  And then Albert called you;
19  right?
20     A.   He reached -- he messaged me.
21     Q.   Texted you?
22     A.   Yeah.
23     Q.   Before he called you?
24     A.   Yeah.

CHRISTINE DANCEL                                    September 08, 2017

Page 22

1    Q.  What was the text?
2         MR. THOMASSEN:  Just to clarify,
3    you're welcome to talk about what -- I guess
4    whether it was a text, but you can't talk
5    about what the content of the message is.
6         MR. MACEY:  It might not be privileged
7    so I got to explore that.
8         MR. THOMASSEN:  You can certainly
9    explore the circumstances around --
10        MR. MACEY:  Sure.
11        MR. THOMASSEN:  -- Albert contacting
12   Ms. Dancel, but I'm instructing the witness
13   not to talk about the content of those
14   conversations.
15        MR. MACEY:  Well, if she
16   doesn't -- I'm just going to tell you, if she
17   wasn't seeking legal advice in the
18   communication, or if he wasn't giving it, it's
19   not a privileged communication, and it sure
20   wasn't work product because he hadn't even
21   hired you yet (sic).
22   BY MR. MACEY:
23        Q.  Had you hired the Edelson law firm at
24   the time of this text?

Page 23

1    A.  No.
2         Q.  Okay.  Had you signed a retention
3    agreement at the time of this text?
4    A.  No.
5         Q.  No.  Had you decided to pursue a
6    lawsuit at the time of this text?
7    A.  No.
8         Q.  Okay.  So he texts you.  Is it to set
9    up a meeting?
10   A.  No.
11        Q.  Okay.  What's the text for?
12        MR. THOMASSEN:  So again, I'm just
13   instructing the witness not to answer to the
14   extent you're going to get into the content of
15   the communication --
16        MR. MACEY:  I'm sorry.
17        MR. THOMASSEN:  -- because they're
18   absolutely privileged.
19        MR. MACEY:  Fine.
20   BY MR. MACEY:
21        Q.  Are you going to -- will you tell me
22   what he said in the text?
23        MR. THOMASSEN:  Same instruction,
24   don't answer that.

Page 24

1    BY MR. MACEY:
2         Q.  Okay.  Is Albert a lawyer?
3    A.  No.
4         MR. MACEY:  Okay.  Well, I don't know
5    what the privilege is, then.  So you're going
6    to waste a lot of money when we go to court on
7    this, but I don't care.
8         MR. THOMASSEN:  Okay.
9    BY MR. MACEY:
10        Q.  You won't tell me what the text was,
11   what was in there?
12   A.  No.
13        Q.  Okay.  As a result -- how long was the
14   text?
15   A.  Not long.
16        Q.  Do you still have it?
17   A.  Yes.
18        Q.  How come?  Was it printed out and
19   produced to us?
20   A.  I'm not sure.
21        MR. MACEY:  Am I going to get a
22   privilege log?
23        MR. THOMASSEN:  Yeah.
24        MR. MACEY:  Will that be on it?

Page 25

1         MR. THOMASSEN:  Any -- anything that
2    we are withholding on the basis of
3    attorney-client privilege I --
4         MR. MACEY:  I assume that's one of
5    them.  Okay.  And just so you know...
6    BY MR. MACEY:
7         Q.  When was this text, what year?
8    A.  I'm not clear on the answer.
9         Q.  You don't know what year the text was?
10   A.  I don't want to give a false answer if
11   I'm not sure.
12        Q.  Okay.  Well, when did your boyfriend
13   tell you about Albert, what year?
14   A.  2015.
15        Q.  2015, okay.
16        So was the text shortly after your
17   boyfriend first told you about Albert?
18   A.  Yes.
19        Q.  Okay.  And when did you file your
20   lawsuit, do you know?
21   A.  2016.
22        Q.  Okay.  Do you know when in 2016 you
23   filed a lawsuit?
24   A.  I'm not clear.

1    Q.  Do you know what season you filed it
2  in?
3    A.  It's a long year; not sure.
4    Q.  Okay.  And then do you know how many
5  months before you filed -- well, let me ask
6  you this:  You got the text.  What was your
7  next communication?
8        Did you subsequently communicate with
9  Albert after that text or did you text him
10  back?
11    A.  I texted him back.
12    Q.  Okay.  And what did you say in that
13  text?
14        MR. THOMASSEN:  Okay.  Again, don't
15  answer that question.  That's getting into
16  attorney-client communication privilege.
17  BY MR. MACEY:
18    Q.  Had you hired him at that time?
19        MR. THOMASSEN:  I object to you -- to
20  the extent you're calling for legal
21  conclusions, but you can have her --
22        MR. MACEY:  Okay.  That's not a proper
23  objection at a deposition.
24        MR. THOMASSEN:  Okay.

1        MR. MACEY:  So if you keep doing that
2  stuff I'm going to stop it and we'll go to
3  court now.  I'm serious.
4        MR. THOMASSEN:  That's fine.
5        MR. MACEY:  Okay.  You cannot object
6  on the ground of a legal conclusion.
7        You can object on form and you could
8  object on privilege, but that's it.
9        MR. THOMASSEN:  Okay.
10        MR. MACEY:  So are you going to keep
11  objecting on those grounds?
12        MR. THOMASSEN:  I'll make my
13  objection.  If you want to --
14        MR. MACEY:  I'll stop it and go to
15  Court.  I don't care.
16        MR. THOMASSEN:  Okay.
17  BY MR. MACEY:
18    Q.  So did you, in that text -- at the
19  time you texted him, had you hired him --
20        MR. THOMASSEN:  Same objection.
21  BY MR. MACEY:
22    Q.  -- as a lawyer?
23        Because he's not lawyer; right?
24        Right?

1    A.  Correct.
2    Q.  So you didn't hire him as lawyer;
3  correct?
4    A.  Correct.
5    Q.  And you didn't understand at that
6  point in time that you had hired the Edelson
7  law firm to represent you in a class action,
8  did you?
9    A.  Could you reformulate that question?
10    Q.  Sure.
11        When you hired him -- when you
12  spoke -- when you texted back this guy -- what
13  was his name again, Albert?
14    A.  Mm-hmm.
15    Q.  You hadn't agreed to pursue a class
16  action against Groupon at that point in time;
17  correct?
18    A.  Correct.
19    Q.  Okay.  You never even heard of the
20  Illinois Right of Publicity Act at the time
21  you texted Albert back; correct?
22    A.  I had heard of it because I had taken
23  a class, but I had -- not related to this
24  case.

1    Q.  Thank you.  Okay.  Thank you.  I
2  appreciate that.
3        What was the class you took that you
4  heard of it?
5    A.  Intro to communication.
6    Q.  And was that at Marquette or was that
7  in Emerson?
8    A.  It was at Marquette.  I started as a
9  journalism major.
10    Q.  Okay.  Your lawyer is not going to let
11  me ask you:  Did you set up a meeting when you
12  texted him back?
13        MR. THOMASSEN:  Again, don't go into
14  the content of communications.
15        MR. MACEY:  You're telling me that
16  whether or not she set up a meeting is a
17  privileged communication?
18        Is that our position?
19        MR. THOMASSEN:  My position is, is
20  that communications between my client and the
21  staff or lawyers at the Edelson PC law firm
22  are privileged.
23        MR. MACEY:  No matter what the
24  communication is?

CHRISTINE DANCEL                                    September 08, 2017

Page 30

1     MR. THOMASSEN:  No, not no matter what
2  the communication is.
3  BY MR. MACEY:
4     Q.  So I'm asking her:  If you set up a
5  meeting, did you say, I'm available at a
6  certain time, I want to meet you?
7     MR. THOMASSEN:  Again, don't -- don't
8  go into the content of -- are you asking about
9  a specific communication?
10    MR. MACEY:  Just ask -- this text.
11  BY MR. MACEY:
12    Q.  Did you set up a meeting with him or
13  someone else at the firm pursuant to that
14  text?
15    A.  No.
16    Q.  Okay.  Did you -- what was your next
17  communication with the firm, or anyone at the
18  firm, Albert, a secretary, anybody?
19    A.  An email.
20    Q.  An email, from who to who?
21    A.  It was from the firm to me.
22    Q.  Who?
23    A.  I can't remember the name.
24    Q.  Do you have the email?

Page 31

1     A.  I do.
2     Q.  Okay.  Did you produce it?
3     A.  Could you clarify?
4     Q.  Sure.
5        Did you copy it to provide to your
6  lawyer to give to us?
7     A.  Yes.
8     Q.  Okay.  And what was in that email?
9     MR. THOMASSEN:  Okay.  Again, don't
10  talk about the contents of the email.
11  BY MR. MACEY:
12    Q.  Well, did the email provide legal
13  advice?
14    MR. THOMASSEN:  Okay.  Object to form.
15  Don't answer that question.
16    MR. MACEY:  Well, wait.  Because it's
17  privileged, whether it, in fact, provided
18  legal advice?
19    MR. THOMASSEN:  You're asking her to
20  draw a conclusion of -- okay --
21    MR. MACEY:  I want to know --
22        (Simultaneous colloquy.)
23    MR. THOMASSEN:  You're asking her --
24  you're asking her to conclude whether or not

Page 32

1  an email falls under the scope of privilege by
2  asking whether or not it contains legal
3  advice.
4     MR. MACEY:  Sorry, Ben, it's her
5  understanding.
6  BY MR. MACEY:
7     Q.  Did you understand that email provided
8  you with legal advice?
9     A.  I don't believe it provided me legal
10  advice.
11    Q.  Okay.  Then what did it say?
12    MR. THOMASSEN:  Okay.  Same objection.
13    MR. MACEY:  All right.  We're
14  stopping.
15    MR. THOMASSEN:  Okay.
16    MR. MACEY:  I'm going to Court.  Thank
17  you.  We're done.
18    I will take the transcript expedited,
19  too.
20    MR. THOMASSEN:  Okay.  And I just --
21  let's just stay on the record.
22    We're here to conduct the deposition
23  today.
24    MR. MACEY:  I --

Page 33

1     MR. THOMASSEN:  We --
2     MR. MACEY:  But I'm allowed -- I'm
3  allowed under the rule to stop a deposition
4  when I think you're going out of your way to
5  get in my face, to not let her answer
6  questions in matters that are clearly not
7  privileged.
8        Okay.  And you're making objections on
9  grounds that you're not allowed to make
10  objections to under the Rules of Civil
11  Procedure, on grounds such as legal
12  conclusion, relevance or otherwise.  You can't
13  do it.
14    MR. THOMASSEN:  Okay.
15    MR. MACEY:  And, Ben, if you're going
16  to keep doing it, which you told me you are,
17  I'm going to Court and I'm getting a
18  declaratory judgment from the Court that you
19  need to answer those questions.
20    I don't care what you say.  If she's
21  got to come back, that's a problem.  And you
22  are going to have to come back.  I'm sorry.
23  It's going to be that way.
24    MR. THOMASSEN:  Okay.  So it's my

CHRISTINE DANCEL                                          September 08, 2017

---

**Page 38**

1      MR. THOMASSEN: -- when you're trying
2  to get at communications that are privileged.
3      MR. MACEY: This is very, very
4  important stuff for a class action as to
5  whether she's an adequate class
6  representative --
7      MR. THOMASSEN: I agree with you --
8      MR. MACEY: I'm not --
9      MR. THOMASSEN: I agree --
10     MR. MACEY: -- going --
11     MR. THOMASSEN: -- with you.
12     MR. MACEY: -- to do this.
13     Okay. I think you're deliberately
14  obstructing. We're done. Thank you.
15     THE COURT REPORTER: And when would
16  you like this by?
17     MR. MACEY: Tomorrow. No, Monday is
18  good.
19     THE COURT REPORTER: Would you like a
20  copy?
21     MR. THOMASSEN: Yes.
22     THE COURT REPORTER: And would you
23  like it expedited?
24     MR. THOMASSEN: Yeah, we need it when

**Page 39**

1  he gets it.
2          (Whereupon, a recess was
3          had.)
4      MR. COHEN: Can we get this as soon as
5  possible, today or tomorrow?
6      THE COURT REPORTER: Absolutely.
7  * * * * FURTHER DEPONENT SAITH NOT * * * *
8          (Proceedings ended at 9:55 a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**Page 40**

1  STATE OF ILLINOIS   )
2                      ) SS:
3  COUNTY OF C O O K   )
4      I, ANGELA C. LOISI, CSR, RPR, FCRR, an
5  Officer of the Court, do hereby certify that
6  heretofore, to-wit, on the 8th day of
7  September, 2017, personally appeared before
8  me, at 100 North Riverside Plaza, Chicago,
9  Illinois, CHRISTINE DANCEL, in a cause now
10  pending and undetermined in the Circuit
11  Court of Cook County, Illinois, wherein
12  CHRISTINE DANCEL is the Plaintiff, and
13  GROUPON, INC., is the Defendant.
14      · I further certify that the said witness
15  was first duly sworn to testify the truth,
16  the whole truth and nothing but the truth in
17  the cause aforesaid; that the testimony then
18  given by said witness was reported
19  stenographically by me in the presence of
20  the said witness, and afterwards reduced to
21  digital format by Computer-Aided
22  Transcription, and the foregoing is a true
23  and correct transcript of the testimony so
24  given by said witness as aforesaid.

**Page 41**

1      I further certify that the signature to
2  the foregoing deposition was waived for the
3  respective parties.
4      I further certify that the taking of
5  this deposition was pursuant to notice, and
6  that there were present at the deposition
7  the attorneys hereinbefore mentioned.
8      I further certify that I am not counsel
9  for nor in any way related to the parties to
10  this suit, nor am I in any way interested in
11  the outcome thereof.
12      IN TESTIMONY WHEREOF: I have hereunto
13  set my verified digital signature this
14  September 8, 2017.
15
16
17
18      *Angela C. Loisi*
19
20
21  Angela C. Loisi, CSR, RPR, FCRR
22
23
24

# EXHIBIT C

**ORDER**                                            (Rev. 9/13/04) CCG 0002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and           )
on behalf of all others similarly situated,   )
                                              )
      Plaintiff,                          )
                                              )
  v.                                       )   No.  16 CH 01716
                                              )
GROUPON, INC., a Delaware Corporation,        )   Judge Thomas R. Allen
                                              )
      Defendant.                         )

### O R D E R

    This cause coming on to be heard on Defendant Groupon, Inc.'s Motion to Compel Discovery and For Sanctions; due notice having been given; counsel for the parties being present; and the Court having reviewed the parties' written submissions, listened to the arguments of counsel, and being otherwise duly advised in the premises,

    IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is granted in part and denied in part.

2. The January 13, 2016 Facebook message is not privileged and shall be produced instanter.

3. The January 13, 2016 email from Mr. Dore and is privileged.

4. Defendant's Motion for Sanctions is denied.

**Name** Novack and Macey LLP (ENM)
**Attorney for** Defendant
**Address** 100 North Riverside Plaza
**City** Chicago, Illinois 60606-1501
**Telephone** (312) 419-6900
**Firm No.** 91731



ENTERED
JUDGE THOMAS ALLEN-2043

ENTERED: OCT 12 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT D

## Brian E. Cohen

| | |
|---|---|
| **From:** | Ben Thomassen <bthomassen@edelson.com> |
| **Sent:** | Thursday, October 12, 2017 2:48 PM |
| **To:** | Eric N. Macey; Brian E. Cohen; Chris Moore |
| **Cc:** | Amir Missaghi; Rafey Balabanian; Ari Scharg |
| **Subject:** | Dancel v. Groupon |
| **Attachments:** | DANCEL000068-DANCEL000071.pdf |

Counsel:

See attached, per today's hearing.

Thanks,
Ben

--
Ben Thomassen | Edelson PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
312.572.7208 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
bthomassen@edelson.com | www.edelson.com

 @EdelsonPC 	in Edelson-PC 	f EdelsonLaw
Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

1

# EXHIBIT E

# FILED UNDER SEAL

# EXHIBIT F

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE DANCEL, individually and on
behalf of all others similarly situated,

            *Plaintiff,*

    v.

GROUPON, INC., a Delaware Corporation,

            *Defendant.*

Case No. 16 CH 01716

Judge Thomas R. Allen

## ORDER

This matter coming to be heard on Plaintiff Christine Dancel's Motion for Disclosure of Information Designated by Defendant as "Highly Confidential" and Discovery Sanctions (the "Motion"); the Court having heard oral argument by the Parties; and the Court being fully advised on the premises,

    IT IS HEREBY ORDERED:

1. The Motion is granted in part and denied in part;

2. Plaintiff's request that the Court strike Defendant Groupon, Inc.'s ("Groupon") confidentiality designations on the documents labeled G_003302 and G_003303 (the "Documents") is denied;

3. Over Groupon's objections set forth on the record and in Groupon's Response to the Motion, Plaintiff may only disclose the Instagram usernames reflected in the Documents to non-party Instagram, LLC; and

4. Plaintiff's request for sanctions is denied.

Dated: September 29, 2017        ENTERED:



Prepared by:
Ben Thomassen
EDELSON PC
350 North Lasalle Street
Suite 1300
Chicago, Illinois 60640
312.589.6370
Firm ID: 44146

_____
Judge Thomas R. Allen

ENTERED
JUDGE THOMAS ALLEN-2043
OCT 02 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
DEPUTY CLERK OF COOK COUNTY, IL

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHRISTINE DANCEL, individually and on behalf of all others similarly situated,<br><br>                         *Plaintiff*,<br><br>     v.<br><br>GROUPON, INC., a Delaware Corporation,<br><br>                         *Defendant*. | Case No. 1:18-CV-02027<br><br>Hon. Judge Ronald A. Guzman<br><br>Magistrate Judge Jeffrey Cole |

## MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL

Pursuant to Local Rule 26.2, Plaintiff Christine Dancel hereby seeks leave to file her Motion for Rule 11 Sanctions, along with certain supporting documents, under seal. In support of this Motion, Plaintiff states as follows:

1.      Pursuant to the stipulated protective order entered in this case, the parties may designate information as "CONFIDENTIAL" if the underlying information is "prohibited from disclosure by . . . contract." (Dkt. 80 at 3.) A party seeking to file confidential information with the Court must do so by motion, pursuant to Local Rule 26.2. (*Id.* at 10.)

2.      Plaintiff's Motion for Rule 11 Sanctions discusses a document (attached as Exhibit 2 to the contemporaneously-filed Thomassen Declaration) that is discussed in Groupon, Inc.'s Response in Opposition to Plaintiff's Motion for Class Certification. (*See* dkt. 40 at 5-6, 25.) Plaintiff's counsel, Edelson PC, is prohibited by contract from making any "public comment[s] in writing" about the document. (*See* Exhibit 2 to the Thomassen Declaration at ¶ 4.1.) Therefore, Plaintiff has designated this document as CONFIDENTIAL pursuant to the operative protective order and now seeks leave to file it under seal. Likewise, because Plaintiff's

Motion for Rule 11 Sanctions and the Declaration of Benjamin S. Thomassen discuss the subject matter of the document, Plaintiff also seeks leave to file the document partially under seal.

3.       Plaintiff has also attached as Exhibit 7 to the Thomassen Declaration excerpts from her deposition transcripts in this case. While neither party has designated these transcripts as confidential, Groupon's counsel quoted—over the course of the deposition—from a communication that is reproduced in Groupon's Opposition to Plaintiff's Motion for Class Certification, (dkt. 40 at 6), and was sealed by order of Court. Because this material was sealed by the Court and generically concerns Exhibit 2 to the Thomassen Declaration (discussed above ¶ 2), Plaintiff seeks leave to file Exhibit 7 to the Thomassen Declaration under seal.

4.       Plaintiff sought leave to file these same documents (and corresponding references) under seal on June 13, 2018. (Dkt. 77 at ¶ 4.) The Court granted that request on June 14, 2018. (Dkt. 79.)

5.       Pursuant to Local Rule 26.2, Plaintiff has filed public (redacted) and provisionally sealed versions of these materials.

WHEREFORE, Plaintiff respectfully seeks an order granting her leave to file Plaintiff's Motion for Rule 11 Sanctions, the accompanying declaration of Benjamin S. Thomassen, and Exhibits 2 and 7 attached to the Thomassen Declaration under seal.

Respectfully submitted,

**CHRISTINE DANCEL,** individually and on behalf of all others similarly situated,

Dated: June 22, 2018                    By: /s/ Benjamin S. Thomassen
                                                        One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman

brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

Counsel for Plaintiff and the Putative Classes

## CERTIFICATE OF SERVICE

I, Benjamin S. Thomassen, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on June 22, 2018.

/s/ Benjamin S. Thomassen

# EXHIBIT H

## CRAIN'S
CHICAGO BUSINESS.

**Print Story**.                    **Printed from ChicagoBusiness.com**

## Lawsuit says Groupon issues illegal coupons

By: John Pletz March 03, 2010

(Crain's) — A Chicago man has filed a lawsuit against Groupon, the popular Web site that offers daily group discounts on services and products, saying it violates a state consumer-protection law.

Customer Daniel Keeler claims Groupon's deals violate a 2008 law that prohibits companies from selling gift certificates that expire in fewer than five years. The suit, filed Tuesday in Cook County Circuit Court, by Chicago-based law firm Edelson McGuire LLC, seeks class-action status.

Mr. Keeler says that on Jan. 19 he purchased three $40 Groupon certificates offering $80 worth of flowers from Chicago-based Grow Flower Shop. He says the offer is only good through July 2010, violating the state law.

He also claims the deal was deceptive because of restrictions involving a $20 delivery charge from the flower shop and restrictions surrounding Valentine's Day orders and selection of flowers.

Groupon says its service doesn't violate the law because the face value of the consumer's investment will be honored by the merchant indefinitely, even if the discount promotion expires.

"They don't require merchants to honor them, " says Jay Edelson, partner at Edelson McGuire. "If that were true, we wouldn't have sued."

Groupon is a unique play on social networking and e-commerce. It offers a deal with a merchant in each of its 38 cities every day. If enough people respond, the group deal, or "Groupon," is on.

The lawsuit sets up a potentially interesting legal clash involving a business model that was still being developed when the law was written.

"We're baffled by this whole thing," Groupon CEO Andrew Mason said in a written statement.

He calls Groupon's no-questions-asked refund policy "one of the most irrationally liberal customer-satisfaction policies on the planet."

In the meantime, Groupon wrote on its Web site on Wednesday: "We've decided that the best way to respond is by organizing our own class action. If there actually are customers out there that feel like we've let them down, we want to get them their money as quickly as possible."

Mr. Mason's company has attracted plenty of buzz since it received a $30-million investment in December, led by Accel Partners, a Silicon Valley-based venture capital firm.

He questioned the intent of the suit filed by Edelson McGuire, which has filed several technology-related lawsuits, most recently against Amazon for deleting books on Kindle readers.

It also has filed suit against companies for spamming cell phone users with text-message advertisements.

Mr. Mason wrote in his blog at Groupon: "We can think of two possible explanations for this lawsuit: The law firm sees an opportunity to exploit our success and make a bunch of money. We are indeed systematically deceiving our customers, but instead of taking advantage of our 100% open refund policy or telling us about their problems or sharing them in a public forum, our customers are secretly gossiping about them to each other and Edelson McGuire."

"We never once discussed fees," Mr. Edelson says. "All we wanted was for them to offer refunds to people with expired certificates."