IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christine Dancel, individually and on )
behalf of others similarly situated, )
      Plaintiff, )
       )
      v. )    Case No. 18 C 2027
       )
       )    Judge Ronald A. Guzmán
Groupon, Inc., )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court denies Plaintiff's motion for class certification [19].

## STATEMENT

The Court assumes familiarity with its previous orders and the procedural history of the case. Currently under consideration is Plaintiff's motion for class certification.

**Background**

This case arises from Groupon's use of photos posted by individuals on their Instagram accounts. In short, Groupon developed software in 2015, which it called the Instagram Widget, that would ask Instagram to locate photographs taken at the businesses for which Groupon hosted Deal Pages and Merchant Pages.[1] (Pl.'s Mem. Supp. Mot. Class Cert., Dkt. # 20, at 1.) Groupon describes the Widget as follows:

> The idea [behind the Widget] was to offer users a "window" into photos taken at the location of Groupon Deal and Merchant Pages. The Widget . . . was located "below the fold," so that a visitor to the [Groupon] website would need to scroll down to see it. The Widget sent requests to Instagram through the Instagram

---

[1] "Deal Pages actively sell products and services, [while] nothing is ever available to purchase on Merchant Pages[,] which only provide information to consumers." (Def.'s Resp., Dkt. # 41, at 15.) According to Groupon, the Widget was active from approximately April 2015 through February 2016. (*Id*. at 13.)

> API[2], and Instagram responded by sending back links to photos ("Image URLs") taken at a particular location and posted on Instagram. Groupon received the Image URLs, but never received any of the actual image files, which were hosted by Instagram.
>
> While the Widget was in effect, a visitor to Groupon's website could possibly "see" small versions of up to nine linked images when visiting a Groupon page. If Instagram sent more than nine Image URLs for a particular location, the Widget displayed a "Show More Photos" button which, if clicked, would present up to nine more photos. This process could be repeated once more so that, at most, the Widget could present a total of 27 photos for a particular page. The Widget was structured . . . to mirror Instagram's location feeds, [which] are specific pages on Instagram showing the most popular and most recent publicly-posted images taken at specific locations.
>
> Only limited data received from Instagram was ever loaded into the Widget and potentially viewable to Groupon visitors. The Instagram API provided the Widget with the Instagram user's "username" and a caption (if one existed). However, the username and caption were hidden and never visible in a Groupon visitor's browser unless that visitor "hovered" (*i.e.*, dragged a mouse over) the Image URL.
> . . .
>
> Groupon stored Image URLs it received from Instagram in a temporary storage file or "cache." The cache was constantly refreshed with new data from Instagram that overwrote the old data. The surviving data from the cache represents all the Image URL[]s and other Instagram data that are the subject of Plaintiff's claim. However, both parties agree that just because Image URLs are in the cache files, those images were *not necessarily* ever loaded into the Widget or ever viewed by a Groupon user.

(Def.'s Resp., Dkt. # 41, at 3-5) (emphasis in original). According to Groupon, if an Instagram user's account was set to "private," that user's photos were not accessible to the Widget. Groupon did not look at the photographs prior to posting them on the relevant webpages. (Pl.'s Mem. Supp. Mot. Class Cert., Dkt. # 20, at 1.)

Plaintiff, who went by the username "meowchristine," brought the instant action on behalf of herself and others similarly situated for purported violations of the Illinois Right to Publicity Act ("IRPA"). While at a restaurant in Vernon Hills, Illinois in August 2015, Plaintiff

---

[2] "API" stands for Application Programming Interface, which Groupon describes as a "set of programming instructions and standards that allow applications to talk to one another." (Def.'s Resp., Dkt. # 41, at 3 n.5.)

took a photograph of herself and her boyfriend, posted it on Instagram, and "tagged" it with the restaurant's name. Groupon posted the photo, along with others, on the restaurant's Deal Page in January 2016. The elements of a claim under the IRPA require a plaintiff to show: (1) the use of her identity; (2) for commercial purposes; and (3) without consent. *Gabiola v. Sarid*, No. 16 C 2076, 2017 WL 4264000, at *6 (N.D. Ill. Sept. 26, 2017). Plaintiff moves to certify the following class and subclass:

> <u>Instagram Class</u>: All persons in the United States who maintained an Instagram account and whose photograph (or photographs) from such account was (or were) acquired and used on a groupon.com webpage for an Illinois business (the "Class").
>
> <u>Personal Photo Subclass</u>: All members of the Instagram Class whose likeness appeared in any photograph acquired and used by Groupon (the "Subclass").

(Pl.'s Mem. Supp. Mot. Class Certification, Dkt. # 20, at 2.)

**Analysis**

To be certified as a class action, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and one of the three alternative requirements in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the putative class ("commonality"); (3) the claims or defenses of the named party are typical of the claims or defenses of the putative class members ("typicality"); and (4) the named party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). "[A] proposed class must always meet the Rule 23(a) requirements[.]" *Messner*, 669 F.3d at 811. "Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily [courts] would begin there and only turn . . . to Rule 23(b) after [the court is] certain that all of Rule 23(a)'s requirements had been met." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

Here, Plaintiff seeks certification under Rule 23(b)(3), which requires her to show that: (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods of resolving the controversy ("superiority"). *Messner*, 669 F.3d at 811. District courts should make "whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010). "The decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law

3

or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

As noted above, while courts generally address the Rule 23(a) factors first, the Court has "no need to reach the Rule 23(a) factors, . . . if Rule 23(b)(3)'s criteria are not met." *Id.* Because Groupon's objections to class certification focus on the Rule 23(b) factors, the Court begins its inquiry there. The relevant section of Rule 23(b) provides as follows:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> ...
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Groupon contends that "individualized issues of fact and law far outweigh any common questions, and the sheer number of those individualized issues, compounded by insoluble case-management problems, means that class treatment is inferior to individual claims." (Def.'s Resp., Dkt. # 41, at 9.) The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Ocampo v. GC Servs. Ltd. P'ship*, No. 16 C 9388, 2018 WL 6198464, at *5 (N.D. Ill. Nov. 28, 2018) (citation and internal quotation marks omitted). "To establish predominance, a plaintiff must be able to prove h[er] case with 'evidence that is common to the class rather than individual to its members.'" *Gordon v. Caribbean Cruise Line, Inc.*, No. 14 C 5848, 2019 WL 498937, at *9 (N.D. Ill. Feb. 8, 2019) (citation omitted). Here, the class does not meet this requirement.

The IRPA prohibits the use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a). As summarized by another court:

4

> [The] IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." And "name" means "the actual name or other name by which an individual is known that is intended to identify that individual." IRPA supplanted the common-law tort of appropriation of likeness (also called the right of publicity), but the statutory and common-law claims require essentially the same three elements: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes.

*Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017) (internal citations omitted).

In determining whether class issues of fact or law predominate over individual ones, the Court "focuses 'on the substantive elements of plaintiffs' cause of action and inquire[s] into the proof necessary for the various elements.'" *Gordon*, 2019 WL 498937, at *9 (citation omitted). The Court's analysis begins and ends with the first element of an IRPA claim. Groupon contends that the Instagram Class[3] fails the predominance requirement because "whether or not a particular Instagram username could constitute an 'identity' under the IRPA presents an individualized question of fact that each particular class member would need to prove." (Def.'s Resp., Dkt. # 41, at 9-10.) To establish identity under the IRPA, putative class members would have to show that they were "identified to a reasonable audience by the defendant's use of [his or] her name or likeness." *Id*. at 7. In other words, "[t]he use must . . . be sufficient to identify the person whose identity the defendant is alleged to have appropriated." *Id*. at *6 (citation and internal quotation marks omitted). This is inherently a question of fact that cannot be answered with the same evidence across the putative class. *Id*. ("Whether a plaintiff is indeed identified by the defendant's use is a question of fact."). Plaintiff's assertion that "the Court can commonly answer whether Instagram usernames . . . categorically 'serve to identify that individual to an ordinary, reasonable viewer [of Groupon's website]'" is unpersuasive and misses the ultimate point of the predominance inquiry. While it is true that the question of whether "*any* Instagram username identifies an individual to 'a ordinary, reasonable viewer' is a question common to every putative class members' claim," (Pl.'s Reply, Dkt. # 75, at 5) (emphasis in original), this argument ignores the individual inquiry that is the essence of determining "identity" *under the IRPA*.

The problem can be illustrated by listing a handful of usernames that were part of the last cache of Image URLs that was saved by Groupon: eawhalen; artistbarbie; barrioycache; suwalski2000; drenkolshi; sibanya; sawitte; jayomayo; ladysolinc; charlotteagenda; kban7; isa.tdg; aracelv92; loparse; urbantraveller; kweciel; heymelavita; johanneus. (Pl.'s Reply, Dkt. # 75, Ex. 5 to Ex. A.) It is simply impossible to make any type of across-the-board determination

---

[3] Groupon calls this the Username Class because the alleged IRPA violation is based on the use of the individual's username and not whether any likeness is shown in the photo.

as to whether these names "identify" a particular person, as that term is defined by the IRPA. This is true even if an Image URL that Groupon received includes a photo of the individual associated with the username. While a photograph of a person may assist a factfinder in concluding that an individual's identity has been used, this determination must still be made on a username-by-username (photo-by-photo) basis. For this same reason, individual issues predominate with respect to the proposed Personal Photo Subclass. Moreover, as to the Instagram Class, not all of the Image URLs contain photos of individuals–sometimes it is a photo of a bowl of noodles ordered at a given restaurant or the polished nails of a person showing off her manicure. Circumstances such as these add another layer of consideration to the factfinder's determination of whether a specific username and image identifies an individual within the meaning of the IRPA. As a result, the Court finds that neither the proposed Instagram Class nor the Personal Photo Subclass is "sufficiently cohesive" to satisfy Rule 23(b)(3)'s predominance requirement.

**Conclusion**

For the reasons stated above, Plaintiff's motion for class certification is denied.

**Date:** March 4, 2019

                                                     **Ronald A. Guzmán**
                                                   **United States District Judge**