**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Christine Dancel,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | **No. 18 C 2027** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **Groupon, Inc.,** | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for summary judgment [157] is denied. The parties are directed to appear for a telephonic hearing on September 15, 2020 at 10:00 a.m. to set a trial date.

## STATEMENT

Plaintiff sued Groupon for violating the Illinois Right to Publicity Act ("IRPA") after she posted a photo of herself on Instagram, and Groupon used the photograph on one of its coupon-offer webpages. After this Court's denial of class certification was affirmed on appeal, Plaintiff elected to proceed individually and now moves for summary judgment. For the reasons stated below, Plaintiff's motion is denied.

**Facts**

From April 2015 to February 2016, Instagram maintained and operated an application programming interface or "API," which allowed third-party software developers to search programmatically through the photos posted by members of the Instagram community. In response to a search by an API user (here, Groupon), the API would return data relating to matching Instagram content, including hyperlinks to Instagram-user photos and the associated usernames associated with the Instagram photos. When incorporated into a webpage, these photo hyperlinks would display the associated Instagram photos.

Through its website, Groupon sells "Deals," which entitle buyers to discounted goods and services at participating businesses. In 2015, Groupon launched its Instagram Widget, which was programmed to display photos that Instagram users had posted publicly and tagged as associated with the business featured in a Groupon deal. Groupon located the photos it used through the Instagram API. Individuals searching for coupons on Groupon's Deal pages could not only see the photos obtained by the Instagram Widget but could also enlarge the image and view the Instagram user's username.

Plaintiff joined Instagram in July 2011. In August 2015, she attended a birthday party at the Philly G's restaurant in Vernon Hills, Illinois, where she and her boyfriend posed for a photo. Plaintiff posted the photo to her Instagram account. In January 2016, Groupon featured a Deal for the Philly G's restaurant. The Instagram Widget displayed several photographs on the Philly G's Deal page, including Plaintiff's.

The Instagram Terms of Use reference and incorporate the Instagram Privacy Policy. As an Instagram user, Plaintiff agreed to the Instagram Privacy Policy that went into effect on or about January 2013, which provided that publicly-posted content "becomes available to the public" and "may be re-shared by others." The Privacy Policy also explained that such content "is searchable by other Users and subject to use under our Instagram API."

**Analysis**

The IRPA grants an individual the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10. Under the IRPA, "[a] person may not use an individual's identity for commercial purposes . . . without having obtained previous written consent . . . ." 765 ILCS 1075/30(a). "Where a rule of law requires information to be 'written' . . . , an electronic record satisfies that rule of law." 5 ILCS 175/5-115.

Plaintiff alleges that Groupon used her identity for commercial purposes without her consent when it placed her photograph on its Deal page for Philly G's. Groupon responds that Plaintiff consented to the use of her photo.[1] The term "consent" is not defined in the statute. It is undisputed that, as an Instagram user, Plaintiff agreed to the Instagram Terms of Use that went into effect on or around January 2013, which reference and incorporate the Instagram Privacy Policy. At the time that Plaintiff took and posted the photo in August 2015, Instagram's Terms of Use provided that users "grant to Instagram a non-exclusive, fully paid and royalty-free, transferable, sub-licensable, worldwide license to use the Content that you post on or through the Service, subject to the Service's Privacy Policy." In turn, Instagram's Privacy Policy then in effect explained to users that they could limit who sees what they post by setting their account to "private." However, if users did not set their account to "private," then the user agreed that: "Any information or content that you voluntarily disclose for posting to [Instagram], such as User Content, becomes available to the public . . . . Once you have shared User Content or made it public, that User Content may be re-shared by others."

Plaintiff agrees that it is "generally true" that the Instagram Terms of Use did not "'limit what Instagram could do with a photo once it [was] publicly posted for the world to see.'" (Pl.'s Reply, Dkt. # 189, at 6) (citation omitted). Plaintiff contends, however, that while she gave *Instagram* an unlimited license to use any photos she posted, "what is missing is any document demonstrating, or even suggesting, that Instagram's license . . . was transferred or sublicensed"

---

[1] According to the parties, whether Plaintiff's identity was used and whether it was used for a commercial purpose are not at issue. As briefed, the parties dispute only the question of consent.

2

to Groupon. (*Id*.) Groupon asserts that it obtained a license to the photo pursuant to the API Terms of Use, which stated, in relevant part, that the "Instagram APIs can be used to provide [Groupon] with access to User Content . . . ." (Pl.'s Ex. M, Dkt. # 162-13, at 1.)

Nevertheless, while Groupon was able to obtain Plaintiff's photo through the Instagram API, the Instagram API Terms of Use expressly stated that the Instagram API was licensed to Groupon on "the terms and conditions set forth below." (*Id*.) Those terms and conditions included a section called "Licensed Uses and Restrictions," which stated in part:

> You [*i.e*., Groupon] shall . . . [c]omply with any requirements or restrictions imposed on usage of user content by their respective owners. Remember, Instagram doesn't own User Content – Instagram users do. Although the Instagram APIs can be used to provide you with access, neither Instagram's provision of the Instagram APIs to you nor your use of the Instagram APIs override User Content owners' requirements and restrictions . . . .

(*Id*.) In other words, while the Instagram API gave Groupon *access* to Plaintiff's photo, Groupon's *use* of the photo was subject to "any requirements or restrictions imposed on usage . . . by the[] respective owner[]." According to Groupon, no restrictions were imposed on its use of Plaintiff's photo because Plaintiff's consent was unqualified; upon becoming an Instagram User with a "public" setting, Plaintiff agreed that "[a]ny information or content that [she] voluntarily disclose[d] for posting to [Instagram], such as User Content, [would] become[] available to the public . . . . [and] [could] be re-shared by others."[2] *Cf. Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 931 (Ill. App. Ct. 2013) (finding no consent by contest winner to use her photograph in media kit, and noting that although "defendant might have obtained a complete release covering all uses, it did not do so.")

Illinois courts have stated that "the term 'consent' . . . implies an understanding of the thing consented to." *Mercado v. Mt. Sinai Hosp. Med. Ctr. of Chi.*, 889 N.E.2d 730, 733 (Ill. App. Ct. 2008) (citation and internal quotation marks omitted). A question of fact exists as to what Plaintiff's understanding was (*i.e*., what the extent of her consent was) when she agreed that posting photos to Instagram meant that they would be "available to the public" and could be "re-shared by others." Accordingly, summary judgment on this ground must be denied.

Groupon argues that even if a violation of the IRPA occurred, it was *de minimis*. According to Groupon, the Philly G's Deal page was one of over a million Deal and Merchant pages appearing on Groupon's website in early 2016, and Plaintiff's photo was one of eight other photographs of 31 different individuals. Groupon further notes that only a small fraction of Groupon users ever saw the photo because it appeared "below the viewport of the monitor of the

---

[2] When Plaintiff signed up for Instagram, she acknowledged that her posts would be searchable and "subject to use under [the] Instagram API." (Pl.'s Ex. D, Dkt. # 162-4, at 3.) Further, Instagram's Privacy Policy explained to Instagram users that their publicly-posted user content was available to third parties through its API: "[A]ny User Content that you make public is searchable by other Users and subject to use under our Instagram API." (*Id*.)

screen," and a user would have to "scroll through several screen shot pages to see it." (Def.'s Resp., Dkt. # 176, at 17.) According to Groupon: "Without [the *de minimis* exception], any commercial entity that utilizes a photo showing large masses of people – like Millennium Park during Lollapalooza or the starting line of the Chicago Marathon – could be subject to thousands of independent IRPA claims for each of the tiny faces that appear in the image." (*Id.*)

But the statute does not provide for a *de minimis* exception. Indeed, the IRPA expressly states that its rights and remedies supplant the established common law. *See* 765 ILCS 1075/60. Moreover, the fact that an individual can obtain statutory damages of $1,000.00 for a violation, absent a showing of actual damages, informs against the existence of a *de minimis* exception. Finally, Groupon's argument that a *de minimis* exception must exist because otherwise a commercial entity using a photo that shows large masses of people could be liable to thousands of individuals is inapposite. If a photo shows "tiny" faces of "large masses of people," a valid argument can be made that an individual's identity is not being used for a commercial purpose. Here, that Plaintiff's identity was being used is not contested.

**Conclusion**

For the reasons stated above, Plaintiff's motion for summary judgment is denied. The parties are directed to appear at a telephonic hearing on September 15, 2020 at 10:00 a.m. to set a trial date.

**Date**: August 21, 2020

　　　　　　　　　　　　　　　　　　　_Ronald A. Guzmàn_
**Ronald A. Guzmàn**
**United States District Judge**